No. 52,562

STATE OF KANSAS, *Appellee,* v. ROGER IRONS, JR., *Appellant.*

(630 P 2d 1116)

Opinion filed July 17, 1981.

*James L. Burgess,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for the appellant.

*Jack Peggs,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Roger Irons, Jr. appeals from a jury conviction of aggravated robbery. The robbery occurred on April 3, 1980, at a Quik-Trip convenience store located at 1725 East 47th Street South, Wichita, Kansas. In this appeal he questions the admissibility of evidence of a prior March 17 robbery which was introduced at his trial. He had been tried and acquitted of the March 17 robbery. His defense in that case was based on alibi. He had introduced testimony that he was not present and did not participate in the crime.

The following facts leading to his present conviction are highly summarized. A man wearing a green army jacket and a dark colored ski mask entered a store and ordered the people in the store to sit on the floor behind the counter. The robber carefully removed all the money from the cash register except for two one dollar bills in the ten dollar slot. The two one dollar bills were clipped to an alarm system. The defendant at one time had worked at a Quik-Trip store. The robber took the cash from the cash drawer, removed the money from a floor safe, and left the store through the back door. Defendant's green station wagon was seen shortly thereafter driving in the general area where the robbery had occurred. There was testimony from a woman that defendant left a green bulky coat with her on the evening of April 3. She found a ski mask, several hundred dollars in bills, some change, and a few checks in the pockets of the coat. She further testified the coat was taken to another place as soon as she learned defendant had been arrested. The coat, money, and ski mask were never located by the police.

The first trial of defendant on the April 3 robbery ended in a mistrial. The jurors were unable to agree on a verdict. No evidence of the March 17 robbery was introduced at that trial. The defendant was then retried and the State sought and was granted permission to introduce testimony concerning the March 17 robbery of which defendant had been acquitted. With the testimony of witnesses to the March 17 robbery added to that of the April 3 robbery the defendant was convicted. An instruction limiting the purpose of the prior crime evidence was given. The evidence was limited to proof of plan and identity.

K.S.A. 60-455 provides:

"[E]vidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

To be admissible under this statute it is not necessary for the State to show that the defendant was actually convicted of the other offense. *State v. Darling,* 197 Kan. 471, 419 P.2d 836 (1966). This statement was approved in *State v. Bly,* 215 Kan. 168, 177, 523 P.2d 397 (1974).

Under the provisions of the above statute it was stated in *State v. Bly,* 215 Kan. 168, Syl. ¶ 3:

"In determining whether or not to admit evidence of other crimes a trial court must employ a 'balancing' procedure, *i.e.* a court must weigh the probative value of the evidence offered against its tendency to prejudice the jury."

Defendant claims it was error to introduce the evidence of the prior crime because he had been acquitted and the evidence when introduced by the State required him to defend himself a second time, thus constituting double jeopardy. On the other hand, the State relies on *State v. Darling,* 197 Kan. 471, in which case the prosecutor was permitted to introduce evidence concerning a prior similar incident or offense for which the defendant, Darling, was prosecuted and acquitted. We will examine this case later.

There is abundant authority on this question from outside Kansas. There is no general agreement in the cases as to whether evidence of a prior crime of which a defendant was acquitted may be admitted into evidence. See Annot., Evidence—Other Offense—Acquittal, 86 A.L.R.2d 1132-1147. Generally, it may be said that evidence, otherwise competent, of another crime committed by the accused is not rendered inadmissible per se by the fact the accused was acquitted of such crime.

In light of the holding in *Ashe v. Swenson,* 397 U.S. 436, 25 L.Ed.2d 469, 90 S.Ct. 1189 (1970), the federal courts and a goodly number of state courts have disapproved evidence of prior crimes of which defendant has been acquitted where the issue for which the evidence is offered was squarely faced and disposed of in the prior acquittal. *Wingate v. Wainwright,* 464 F.2d 209 (5th Cir. 1972); *United States v. Powell,* 632 F.2d 754 (9th Cir. 1980); *United States v. Leach,* 632 F.2d 1337 (5th Cir. 1980); *United States v. Castro,* 629 F.2d 456 (7th Cir. 1980); *United States v. Keller,* 624 F.2d 1154 (3d Cir. 1980); *United States v. Lee,* 622 F.2d 787 (5th Cir. 1980); *State v. Long,* 206 Neb. 446, 293 N.W.2d 391 (1980); *State v. Lewis,* 599 S.W.2d 94 (Mo. App. 1980); *Williams v. State,* 550 S.W.2d 246 (Tenn. Crim. App. 1976).

In *Ashe v. Swenson,* 397 U.S. 436, several masked gunmen robbed six individuals engaged in a poker game. The defendant was tried and acquitted of robbing one of the six poker players. Thereafter the defendant was tried and convicted of robbing one of the other poker players. The Supreme Court of Missouri affirmed the conviction and denied a plea of former jeopardy

which was urged by defendant. The case wound a tortuous path from the state courts through the federal courts until it finally arrived at the United States Supreme Court. On certiorari that court reversed, stating:

"The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." 397 U.S. at 446.

In arriving at a decision the high court said the question is whether collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, and not whether it is a requirement of due process. The court stated:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85. . . .

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 U.S. 575, 579." 397 U.S. at 443-44.

We subscribe to that definition and statement by the high court.

The high court in *Ashe* succinctly stated that for whatever else the constitutional guarantee of the Fifth Amendment might embrace, it surely protects a man who has been acquitted from having to "run the gauntlet" a second time.

In *Wingate v. Wainwright,* 464 F.2d 209, defendant was tried for robbery of a small store. Over defense objections, the State called witnesses who testified that the defendant had previously robbed them at various stores and gas stations in the state. Defendant had previously been acquitted of each of these prior

offenses. In reversing the judgment and ordering a new trial that court said:

"The determination of whether collateral estoppel applies in a criminal case where a previous judgment of acquittal was based on a general verdict requires a court to examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 464 F.2d at 212.

The court in *Wingate* further stated:

"It is fundamentally unfair and totally incongruous with our basic concepts of justice to permit the sovereign to offer proof that a defendant committed a specific crime which a jury of that sovereign has concluded he did not commit. Otherwise a person could never remove himself from the blight and suspicious aura which surround an accusation that he is guilty of a specific crime." 464 F.2d at 215.

However, we wish to reemphasize that evidence of a prior offense does not have to be excluded indiscriminately under the federal cases. In *Oliphant v. Koehler,* 594 F.2d 547 (6th Cir. 1979), defendant was tried for rape. He had successfully defended several previous charges of rape based on the defense of consent. In each case he admitted having sexual intercourse with the complainant but he followed a pattern of making it appear that each victim consented. He testified in each case the complainant became offended at something he said or did and then made complaint to the police. In each case he went to the police with this story before his victim was able to report the rape. The court in *Oliphant* held the defendant's claim of collateral estoppel, as to the prior offenses of which he had been acquitted, was without merit. Evidence of the prior offenses was held admissible to prove a pattern or plan. There was no issue on pattern or plan decided in the prior cases, and defendant's identity had not been an issue. The issue in each of the prior cases was whether the victim consented to sexual intercourse with the defendant.

The State relies heavily on the case of *State v. Darling,* 197 Kan. 471. The defendant seeks to distinguish that case on the facts. It is the only Kansas case that deals with the admission of evidence of a similar prior offense where the defendant was acquitted. In *Darling,* the defendant stood charged with employing an instrument with the intent to procure an abortion on a pregnant woman. Defendant had previously been charged and acquitted on a similar charge, but the abortion was procured on a different woman. In the second prosecution of Darling there was no question the defendant performed a specific medical procedure on the patient

and the procedure resulted in an abortion. The issue was whether defendant knowingly performed that procedure with the intent to commit an abortion.

The prosecution in *Darling* was permitted to present evidence that on the previous occasion the defendant had performed this same procedure on another woman which also resulted in an abortion. The issue decided in the first case was not the identity of the person who performed the abortion; that had been admitted. The issue was whether there was a willful intent to induce the abortion. The jury in the first case may have determined the defendant did not know or have a willful intent to commit an abortion on the first woman. However, such a determination in the first case would not foreclose a willful intent or knowledge by the defendant when he performed the same procedure on the second woman. Proof that an abortion resulted from the same procedure in the first case would be relevant to establish that defendant performed the same procedure in the second case with intent and knowledge an abortion would result. Acquittal on the prior charge under these circumstances would not result in collateral estoppel.

Under the various cases discussed it appears that the balancing test of *State v. Bly,* 215 Kan. 168, remains a proper test to apply in determining whether to admit evidence of a prior offense. However, when an application is made to admit evidence of a prior offense of which defendant has been acquitted, an additional consideration presents itself—the possibility of collateral estoppel.

When an issue of ultimate fact has once been determined by a valid and final verdict or judgment that issue cannot again be litigated between the same parties in any future lawsuit under the rule of collateral estoppel. *Ashe v. Swenson,* 397 U.S. at 443; *Wells v. Davis,* 226 Kan. 586, 589, 603 P.2d 180 (1979).

The rule of collateral estoppel in criminal cases is not to be applied with a hypertechnical approach, but with realism and rationality. Where a previous judgment of acquittal is based upon a general verdict this approach requires a court to examine the record of the prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter, and if the court concludes a rational jury would have had to base its verdict of acquittal on the same issue which the State seeks to prove by

introducing evidence of a prior offense then collateral estoppel applies. *Sealfon v. United States,* 332 U.S. 575, 579, 92 L.Ed. 180, 68 S.Ct. 237 (1948); *Ashe v. Swenson,* 397 U.S. at 444.

This is a logical extension of the "balancing" test recognized in *State v. Bly,* 215 Kan. 168. When a prior similar offense is offered as evidence of a particular issue of material fact and the defendant was previously tried and acquitted of the offense based on a determination of that issue, collateral estoppel nullifies the probative force of the evidence of the former offense. Then such evidence should not be admitted.

With the foregoing in mind we turn to the facts of the present case. The evidence of the prior offense disclosed sufficient similar facts and circumstances to raise a reasonable inference that the same individual committed both crimes. However, the defendant was tried and acquitted of the March 17 robbery. He steadfastly denied committing that crime and several witnesses testified he could not have been present at the time and place of that robbery. The issue of his identity was squarely presented in the trial of the prior offense and he was acquitted of that crime. The issue of defendant's participation in that case was settled. Collateral estoppel protects him from having to retry the prior offense and defend a second time. Acquittal by the jury in the prior trial had to be based on a finding that he did not commit the prior offense. In the words of *Ashe v. Swenson,* 397 U.S. 436, no rational jury could have grounded its verdict upon an issue other than that which defendant now seeks to foreclose from consideration. The admission of the testimony of the witnesses as to defendant's participation in the prior offense was error.

In addition there can be little doubt under the facts and circumstances of the present case that the admission of such evidence along with the comments of the prosecutor on closing argument constituted prejudicial error. The first trial, without that evidence, ended in a hung jury. It was not until the evidence of the prior offense was introduced that a verdict of guilty was obtained at a second trial. It is apparent this inadmissible evidence made the difference.

In the closing argument, the prosecutor erroneously argued that the jury was "not bound by their [prior jury's] determination and it is simply for you to decide if you feel there's a need to decide

whether or not Roger Irons was at that other Quicktrip on March 17th."

The testimony and argument as to defendant's participation in the prior offense of which he had been acquitted constituted reversible error. The judgment and conviction are reversed and the case is remanded for a new trial.

MCFARLAND, J., dissenting.