274 P.3d 1225

**The STATE of Arizona, Appellee,**

v.

**David James YONKMAN, Appellant.**

**No. 2 CA–CR 2010–0338.**

Court of Appeals of Arizona, Division 2, Department A.

April 26, 2012.

---

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani and Alan L. Amann, Tucson, Attorneys for Appellee.

Lori J. Lefferts, Pima County Public Defender By Lisa M. Hise, Tucson, Attorneys for Appellant.

## OPINION

ECKERSTROM, Presiding Judge.

¶ 1 Appellant David Yonkman was convicted after a jury trial of sexual abuse and

sexual conduct with a minor based on acts he committed against his stepdaughter. He was sentenced to a mitigated term of four years' imprisonment for sexual conduct with a minor, followed by lifetime probation for sexual abuse. He argues the trial court abused its discretion in admitting other-act evidence about his alleged molestation of two other victims, precluding evidence of his prior acquittal on those molestation charges, denying his motion to suppress, and admitting prior consistent statements. Because we conclude his confession was obtained in violation of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and the Fifth and Fourteenth Amendments to the United States Constitution, we reverse the order denying the motion to suppress the confession. Accordingly, his convictions and sentences are reversed, and the case is remanded to the trial court.

¶ 2 We state the facts in the light most favorable to upholding the convictions. *State v. Fontes,* 195 Ariz. 229, ¶ 2, 986 P.2d 897, 898 (App.1998). In March 2010, fifteen-year-old C. told her mother, K., that Yonkman, her stepfather, had "been touching [her] inappropriately." K. reported the allegations to police, and C. underwent a forensic interview in which she repeated the allegations.

¶ 3 At trial, C. testified about two separate incidents in which she had awoken to find her pants off, her underwear around her ankles, and Yonkman fondling her breasts and/or her vagina. The state also presented the testimony of two of C.'s friends who allegedly had been molested by Yonkman during sleepovers at the Yonkman home. Yonkman later admitted in an interview with police that he had touched C. on her breasts and vagina.

¶ 4 Yonkman was charged with sexual abuse and sexual conduct with a minor; he was convicted and sentenced as set forth above, and this timely appeal followed.

### Motion to Suppress Confession

¶ 5 Yonkman argues the trial court erred in denying his motion to suppress the incriminating statements he made to a detective. "When reviewing a suppression order entered after a hearing, we consider only the evidence presented at the hearing, which we view in the light most favorable to upholding the trial court's order." *State v. Carlson,* 228 Ariz. 343, ¶ 2, 266 P.3d 369, 370 (App.2011). We defer to the court's factual findings but review de novo its ultimate legal conclusions. *State v. Booker,* 212 Ariz. 502, ¶ 10, 135 P.3d 57, 59 (App.2006).

¶ 6 At the suppression hearing, the parties stipulated to the following facts surrounding Yonkman's first encounter with a police officer during which he had invoked his right to counsel. A Tucson Police officer went to the Yonkman home on March 27, 2010, in response to C.'s allegations of sexual contact. When Yonkman arrived, he was detained by the officer and read the *Miranda* warnings.[1] He immediately invoked his right to counsel, and the officer asked no further questions about the allegations.

¶ 7 Several days later, Tucson Police Detective Gabriel Rivera received a telephone call from K. stating that C. had recanted the allegations.[2] Rivera told K. that he could close the case if Yonkman would undergo a polygraph test and give a statement. When K. confirmed to Rivera that she would pass this information on to Yonkman, Rivera gave her his contact information specifically for her to provide it to Yonkman. Rivera later acknowledged that his "only way ... to get in contact" with Yonkman was through K. Later that day, Yonkman called Rivera to schedule an appointment for an interview. They set the appointment for April 1, and Yonkman appeared at the police station on the scheduled date. At the station, Rivera took Yonkman into an interview room and told him he was free to leave at any time and that he did not have to talk to Rivera. However, Rivera reread the *Miranda* warnings because the circumstances of the interview "could be construed as [Yonkman] being detained or under arrest." Yonkman stated he understood his rights and agreed to answer

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Nothing in the record suggests that this call was instigated by Yonkman.

Rivera's questions.[3] Yonkman eventually admitted to touching C.'s breasts and vagina, and he was arrested.

■ ¶ 8 Before trial, Yonkman moved to suppress the statements on the grounds the state could not establish he had validly waived his right to counsel after previously invoking that right, citing the rule set forth in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). There, the Court held that a suspect in custody who invokes his right to counsel after being read the *Miranda* advisory "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880; *accord State v. Staatz*, 159 Ariz. 411, 414, 768 P.2d 143, 146 (1988), *disapproved on other grounds by State v. LeBlanc*, 186 Ariz. 437, 440, 924 P.2d 441, 444 (1996). In other words, the state cannot establish a valid waiver of a defendant's right to counsel once he has invoked that right "by showing only that he responded to further police-initiated custodial interrogation." *Edwards*, 451 U.S. at 484, 101 S.Ct. 1880.[4] The rule is based on the presumption that a suspect who invokes his right to counsel after being read the *Miranda* warnings has deter-

mined he is unable to proceed without the advice of an attorney. *See Arizona v. Roberson*, 486 U.S. 675, 683, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

■ ¶ 9 In *Maryland v. Shatzer*, —— U.S. ——, ——, 130 S.Ct. 1213, 1217, 1223, 175 L.Ed.2d 1045 (2010), the Supreme Court recently extended the *Edwards* rule to breaks in custody lasting less than fourteen days. The Court reasoned:

> The protections offered by *Miranda*, which we have deemed sufficient to ensure that the police respect the suspect's desire to have an attorney present the first time police interrogate him, adequately ensure that result when a suspect who initially requested counsel is reinterrogated after a break in custody that is of sufficient duration to dissipate its coercive effects.

*Shatzer*, —— U.S. at ——, 130 S.Ct. at 1222. The Court found a fourteen-day period "provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody." *Id.* at ——, 130 S.Ct. at 1223. Thus, under *Edwards* and *Shatzer*, a suspect who invokes his right to counsel and is released from custody cannot be interrogated again by law enforcement within fourteen days of

3. To the extent Yonkman has raised an argument that he did not voluntarily waive his rights in this second interaction, we need not address it because of our determination that *Edwards* was violated. For the same reason, we do not address Yonkman's argument that K. was an agent of the state.

4. Some of the facts surrounding the second interview suggest it might have been non-custodial. But the state did not counter Yonkman's *Edwards* claim on this basis to the trial court or in its brief on appeal. We nonetheless ordered supplemental briefing because we must affirm a trial court if its ruling is legally correct for any reason found in the record, *State v. Childress*, 222 Ariz. 334, ¶ 9, 214 P.3d 422, 426 (App.2009), and the United States Supreme Court has stated, albeit in dicta, that a second interrogation must be custodial for the *Edwards* rule to apply. *See Maryland v. Shatzer*, —— U.S. ——, ——, 130 S.Ct. 1213, 1223, 175 L.Ed.2d 1045 (2010) ("In every case involving *Edwards*, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress.").

On further consideration after review of the supplemental briefing, we decline to reach the custody issue on the record before us because (1) the state did not raise it before the trial court; (2) the parties therefore did not focus their inquiries during the suppression hearing on that fact-intensive question, *see Howes v. Fields*, —— U.S. ——, ——, 132 S.Ct. 1181, 1189–90 [182 L.Ed.2d 17] (2012) (whether suspect in *Miranda* custody is fact-intensive inquiry based on totality of circumstances); (3) the trial court therefore did not make any findings of fact regarding that question, which could well turn on witness credibility; and (4) our prior case law strongly cautions against addressing arguments not raised by the parties in the absence of a complete record. *See State v. Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988) (refusing to address suppression ruling on alternative basis not expressly litigated below because suppression hearing "might well have taken a decidedly different twist"); *see also State v. Hendrix*, 165 Ariz. 580, 582, 583, 799 P.2d 1354, 1356, 1357 (App.1990) (declining invitation to affirm trial court's denial of motion to suppress on bases waived by prosecution either below or on appeal).

his invocation unless he reinitiates the communication.

¶ 10 An accused has reinitiated conversation with the police when he makes a statement that expresses a willingness and generalized desire to talk about his case. *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (plurality opinion). Here, although Yonkman seemingly expressed a willingness to talk about his case with the detective, he did so only in response to the detective's suggestion, communicated through K., that the detective would close the case if Yonkman would take a polygraph test and make a statement. And, the record demonstrates that Rivera was well aware that he was conveying a message to Yonkman through K. Thus, Yonkman did not initiate the conversation with the police; rather, the detective initiated the interview. *See The American Heritage Dictionary* 662 (2d college ed.1991) ("initiate" means "[t]o cause to begin"); *see also Bradshaw,* 462 U.S. at 1045, 103 S.Ct. 2830 (relying on dictionary definition of "initiate").

¶ 11 Such a "police-initiated custodial interrogation," *Edwards,* 451 U.S. at 484, 101 S.Ct. 1880, was a clear violation of the bright-line rules of *Edwards* and *Shatzer.* "What *Edwards* requires for a valid waiver is a statement by the accused initiated *solely* by him, without *any* prompting by the police." *State v. Beaupre,* 123 N.H. 155, 459 A.2d 233, 235 (1983); *see, e.g., O'Brien v. State,* 56 So.3d 884, 888–89 (Fla.Dist.Ct.App.2011) (attempts to persuade defendant to reconsider decision to invoke counsel constitute interrogation in violation of *Miranda* ). "In the absence of such a bright-line prohibition [on reinterrogation after invocation], the authorities through 'badgering' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Smith v. Illinois,* 469 U.S. 91, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

¶ 12 That the detective delivered the invitation through K. does not negate that his invitation constituted a reinitiation. *See Ex parte Williams,* 31 So.3d 670, 683 (Ala.2009) ("With third-party communications, the po-

lice are still prohibited from reinitiating questioning, and the impetus for reinitiation must still come from the accused."); *cf. United States v. Henry,* 447 U.S. 264, 270–71, 274, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (Sixth Amendment right to counsel violated when government agent "intentionally creat[ed] a situation likely to induce [defendant] to make incriminating statements without the assistance of counsel" by paying informant to engage defendant in conversation while they were fellow inmates).

¶ 13 The trial court denied Yonkman's motion to suppress the statements, concluding, "Yonkman indeed voluntarily reinitiated by calling Rivera and by appearing for an appointment with Rivera the next day." But Yonkman only contacted the authorities after Rivera had conveyed a message to Yonkman through K. about closing the case. Thus, the meeting and Yonkman's subsequent statements were not "initiated solely by him, without any prompting by the police." *Beaupre,* 459 A.2d at 235 (emphasis omitted).

¶ 14 In concluding the trial court erred in admitting the statements, we do not overlook that neither the original interrogation of Yonkman at his home nor the second interrogation occurred under coercive circumstances. When Yonkman first invoked his right to counsel at his home, the officer immediately ceased questioning him. And Detective Rivera provided *Miranda* warnings before proceeding with the second interview at the station. But neither can we overlook that the detective offered Yonkman a clear inducement to provide a statement when the detective suggested that the case would be closed—and K. would have emotional closure—if Yonkman completed a polygraph test. The United States Supreme Court repeatedly has emphasized that both the accused and the state benefit from having bright-line rules in the context of the invocation of counsel under *Miranda,* despite the fact some confessions will be suppressed that " 'might be voluntary under traditional Fifth Amendment analysis.' " *Roberson,* 486 U.S. at 681–82, 108 S.Ct. 2093, *quoting Fare v. Michael C.,* 442 U.S. 707, 718, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

¶ 15 For the foregoing reasons, we reverse the denial of Yonkman's motion to suppress his confession, and, in turn, reverse his convictions and remand the case to the trial court.

## Evidence of Acquitted Conduct

¶ 16 Yonkman argues the trial court abused its discretion in admitting other-act evidence when he "had been acquitted by a jury of the alleged acts."[5] We review the admission of other-act evidence for an abuse of discretion. *State v. Lehr*, 227 Ariz. 140, ¶ 19, 254 P.3d 379, 386 (2011). Before trial, the state filed its notice of intent to introduce evidence of prior allegations of molestation against Yonkman by two of C.'s friends. Yonkman moved to preclude the evidence, but the court admitted it under both Rule 404(b) and (c), Ariz. R. Evid., to show "motive, intent, plan, or absence of mistake or accident; or that the defendant had a character trait that predisposed him to commit the crime charged; or both."

¶ 17 Rule 404(b) allows the admission of evidence of "other crimes, wrongs, or acts" for purposes that include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In cases involving sexual offense charges, Rule 404(c) allows courts to admit evidence of "other crimes, wrongs, or acts ... if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Before other-act evidence may be admitted under either rule, the trial court must find by clear and convincing evidence that the defendant committed the act. *State v. Aguilar*, 209 Ariz. 40, ¶ 30, 97 P.3d 865, 874 (2004); *State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997). The trial court also must find the other-act evidence is relevant and its probative value is not substantially outweighed by unfair prejudice. *State v. Garcia*, 224 Ariz. 1, ¶ 33, 226 P.3d 370, 380 (2010); *Aguilar*, 209 Ariz. 40, ¶ 30,

97 P.3d at 874. Under either Rule 404(b) or Rule 404(c), the court must give the jury an appropriate limiting instruction if the defendant so requests. *Garcia*, 224 Ariz. 1, ¶ 33, 226 P.3d at 380; *Aguilar*, 209 Ariz. 40, n. 11, 97 P.3d at 874 n. 11.

¶ 18 Yonkman does not argue the trial court erred in its application of Rule 404(b) and (c). Rather, he contends the other-act evidence should have been precluded because a jury acquitted him of those acts, and such acquitted conduct evidence is inadmissible pursuant to our supreme court's opinion in *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960).[6] There, the court precluded evidence of acquitted conduct, reasoning that such evidence was too prejudicial and the defendant should not have to answer twice for a crime of which he has been acquitted. *Id.* at 307, 350 P.2d at 764.

¶ 19 But the United States Supreme Court has since decided that the admission of testimony about acquitted conduct is neither barred by the Double Jeopardy Clause nor the Due Process Clause of the United States Constitution and is admissible, provided it meets the requirements of Rule 404(b), Fed. R.Evid. *See Dowling v. United States*, 493 U.S. 342, 343–44, 348, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). And a majority of state jurisdictions follow the *Dowling* approach in allowing trial courts to admit acquitted conduct under their own rules of evidence. *See* Christopher Bello, Annotation, *Admissibility of Evidence as to Other Offense as Affected by Defendant's Acquittal of that Offense*, 25 A.L.R.4th 934 §§ 2[a], 5 (1983 & Supp.2008) (collecting cases); *see, e.g., People v. Wallen*, 996 P.2d 182, 185 (Colo.App.1999); *State v. Irons*, 230 Kan. 138, 630 P.2d 1116, 1118 (1981).

¶ 20 Moreover, it is unclear whether the court in *Little* was creating a bright-line rule, *see State v. Davis*, 127 Ariz. 285, 286 n. 1, 619 P.2d 1062, 1063 n. 1 (App.1980) (noting *Little* arguably limited to facts before it), and the

5. Although we are reversing the conviction and remanding, we address this issue because of the possibility it could recur on remand. *See State v. Knorr*, 186 Ariz. 300, 305, 921 P.2d 703, 708 (App.1996).

6. Although Yonkman did not specifically argue below that *Little* applies, we address the argument nonetheless without regard to fundamental error or waiver because it is likely to recur in any retrial.

case has not been applied to preclude acquitted conduct in Arizona since it was decided. *See, e.g., State v. Miller*, 129 Ariz. 465, 468, 632 P.2d 552, 555 (1981) (distinguishing *Little* ); *State v. Uriarte*, 194 Ariz. 275, ¶¶ 33–37, 981 P.2d 575, 581–82 (App.1998) (analyzing admission of acquitted conduct without reference to *Little* ). Additionally, without mentioning *Little*, our supreme court has suggested that the question before us has not yet been resolved under Arizona law. *Terrazas*, 189 Ariz. at 584 n. 3, 944 P.2d at 1198 n. 3 (assuming, without deciding, Arizona would follow *Dowling*, "it is not inconsistent with the rule we apply in this case, as the earlier acquittal could be based upon the failure of the state to have proved the prior bad acts beyond a reasonable doubt").

¶ 21 Both the United States Supreme Court and our own supreme court have questioned the logic of precluding otherwise "clear and convincing" evidence merely because a previous fact-finder has not concluded that such evidence eliminated all reasonable doubts about the other act's occurrence. *See Dowling*, 493 U.S. at 348–49, 110 S.Ct. 668; *Terrazas*, 189 Ariz. at 584 n. 3, 944 P.2d at 1198 n. 3. Indeed, as we discuss below, that a previous jury has evaluated such evidence by a wholly different standard of proof in a different case arguably is irrelevant to a separate jury's assessment of that evidence as an other act. As noted, Yonkman otherwise does not challenge admission of the evidence on the ground the court incorrectly applied Rule 404(b) and (c). For the foregoing reasons, we conclude the trial court did not err by allowing evidence of the other acts in this case, even though Yonkman had been acquitted of those other acts.

### Evidence of Fact of Acquittal

¶ 22 Yonkman argues that if prior acquitted conduct is admissible under Rule 404, the jury should be allowed to consider such evidence in light of the acquittal.[7] We address this issue because it too is likely to occur on remand. *See State v. Knorr*, 186 Ariz. 300, 305, 921 P.2d 703, 708 (App.1996). We generally review the preclusion of evidence for an abuse of discretion. *See State v. Villalobos*, 225 Ariz. 74, ¶ 33, 235 P.3d 227, 235 (2010). Yonkman relies on *State v. Davis*, 127 Ariz. 285, 286, 619 P.2d 1062, 1063 (App.1980), in which this court summarily held that "the better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime."

¶ 23 Because that case provides little analysis to support its pertinent conclusion, we choose to read *Davis* in harmony with our rules of evidence, *see State v. Terrazas*, 189 Ariz. 580, 583, 944 P.2d 1194, 1197 (1997), which provide that a trial court ultimately has the discretion to admit or preclude evidence after deciding whether its probative value is substantially outweighed by the danger of unfair prejudice. *See* Ariz. R. Evid. 401, 403; *see, e.g., State v. Connor*, 215 Ariz. 553, ¶¶ 33–34, 161 P.3d 596, 606 (App.2007). In conformity with our interpretation of *Davis*, a survey of other jurisdictions reveals that "[n]early all trial courts have adopted a case-by-case approach in analyzing requests by the defendant for an acquittal instruction." *Kinney v. People*, 187 P.3d 548, 555 (Colo.2008); *see, e.g., Hess v. State*, 20 P.3d 1121, 1125, 1127–29 (Alaska 2001); *People v. Bedoya*, 325 Ill.App.3d 926, 259 Ill.Dec. 243, 758 N.E.2d 366, 381–82 (2001).

¶ 24 The state argues that evidence of the acquittal is (1) irrelevant because the acquittal constitutes a prior jury's conclusion based on a different standard of proof, and (2) confusing because the latter jury may incorrectly think themselves bound by the prior jury's conclusion in assessing the acquitted conduct. And, courts have affirmed the preclusion of the fact of acquittal for those reasons.[8] *See, e.g., United States v. Wells*, 347

---

7. Yonkman sought to introduce evidence of his acquittal, whereas some of the authority he cites involves jury instructions that the defendant was acquitted. However, we see no analytical distinction between the two that is relevant to this discussion.

8. Some courts have also excluded the evidence on the ground that a judgment of acquittal is hearsay. *See, e.g., United States v. Wells*, 347 F.3d 280, 286 (8th Cir.2003). But such a judgment presumably would qualify for admission under the public record exception to the hearsay rule. *See* Ariz. R. Evid. 803(8); *Kinney*, 187 P.3d at 557.

F.3d 280, 285–86 (8th Cir.2003) (irrelevant to prove innocence on current charge); *People v. Bolden*, 98 Mich.App. 452, 296 N.W.2d 613, 617 (1980) (risk of misleading jurors into thinking "defendant absolutely did not commit" other acts).

¶ 25 We acknowledge the validity of those concerns, but also recognize that, in cases "where the jury has heard details of prior trials or criminal investigations such that the jury may speculate that the defendant has been tried and convicted of these prior acts," the lack of an acquittal instruction creates a pronounced risk of juror confusion adverse to the defendant. *Kinney*, 187 P.3d at 557–58; *accord People v. Ward*, 351 Ill.Dec. 809, 952 N.E.2d 601, ¶¶ 45, 48 (Ill.2011). And, any risk the jury will give undue weight to the prior acquittal can be adequately remedied by instructing the jury to evaluate such evidence independently. *See Kinney*, 187 P.3d at 558; *accord Ward*, 351 Ill.Dec. 809, 952 N.E.2d 601, ¶ 47. We think the best rule is that set forth by the Colorado Supreme Court in *Kinney:*

> An acquittal instruction is appropriate when the testimony or evidence presented at trial about the prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act and may be speculating as to the defendant's guilt or innocence in that prior trial.

*Kinney*, 187 P.3d at 557.[9] Any evidence of acquittal, of course, must be admitted properly under Rules 401 and 403.

9. We caution that trial courts should not, in an effort to avoid admitting evidence of a prior proceeding, limit testimony or evidence relevant to the presentation and assessment of other-act evidence. For example, although a jury may suspect there has been a trial on a prior act once any party presents or elicits prior testimony, both parties are entitled to confront the respective witnesses with such prior testimony, in conformity with the rules of evidence, when necessary to impeach, rehabilitate, or refresh recollection. That process may well involve appropriately eliciting that the prior testimony had been given under oath. *See* Ariz. R. Evid. 603 (oath to testify truthfully "designed to impress that duty on the witness's conscience").

10. Notably, the trial court specifically attempted to prevent any mention to the jury that Yonkman

¶ 26 Because we reverse this case on another ground, we need not decide whether, in light of the above rule, the trial court here abused its discretion in precluding evidence of the fact of acquittal on the record before us. In any retrial, we trust the court will evaluate the issue in light of the standards set forth above.[10]

### Prior Consistent Statements

¶ 27 Finally, Yonkman argues the trial court erred in admitting prior consistent statements of C. and A., a victim in the prior case. Given the state's apparent confession of error on this issue, it is unlikely to recur on retrial. Therefore, we need not address the issue further.

### Disposition

¶ 28 For the foregoing reasons, we reverse Yonkman's convictions and remand the case to the trial court for further proceedings consistent with this opinion.

CONCURRING: JOSEPH W. HOWARD, Chief Judge, and J. WILLIAM BRAMMER, JR., Judge.

had faced any prior prosecution based on the evidence· of his prior acts, suggesting the court was at least mindful of the risk the jury might erroneously believe Yonkman previously had been convicted of those charges. However, the court did not preclude the state or defense from eliciting that the other-act victims had previously testified in court. One of the girls even referred to a "court trial." Under these circumstances, the jury likely speculated as to the outcome of any prior proceedings against Yonkman. *See Kinney*, 187 P.3d at 558 (abuse of discretion to refuse acquittal instruction when jury clearly speculated about outcome of previous "proceedings," even though trial court attempted to preclude mention of prior "trial").