SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-12-0238-PR |
| | ) | |
| Appellee, | ) | Court of Appeals |
| | ) | Division Two |
| v. | ) | No.  2 CA-CR 10-0338 |
| | ) | |
| | ) | Pima County |
| DAVID JAMES YONKMAN, | ) | Superior Court |
| | ) | No.  CR20101253001 |
| | ) | |
| Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable John S. Leonardo, Presiding Judge

**AFFIRMED IN PART**
_____

Opinion of the Court of Appeals, Division Two
229 Ariz. 291, 274 P.3d 1225 (App. 2012)

**VACATED AND REMANDED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                Phoenix
     By   Kent E. Cattani, Chief Counsel,
          Criminal Appeals/Capital Litigation
          Joseph T. Maziarz, Assistant Attorney General
          Alan L. Amann, Assistant Attorney General        Tucson
Attorneys for State of Arizona

LORI J. LEFFERTS, PIMA COUNTY PUBLIC DEFENDER              Tucson
     By   Lisa M. Hise, Deputy Public Defender
          David J. Euchner, Deputy Public Defender
Attorneys for David James Yonkman
_____

**B E R C H**, Chief Justice

¶1      This  case  addresses  whether  a  police  officer's

response to a phone call placed by a suspect's wife reinitiates

an interrogation for purposes of *Edwards v. Arizona*, 451 U.S. 477 (1981). We conclude that it does not. When the suspect later contacted police and arranged an interview, the suspect reinitiated the interrogation.

## I. FACTS AND PROCEDURAL HISTORY

¶2 On March 27, 2010, David James Yonkman's wife, Kelly, called police and reported that Yonkman had sexually molested her daughter. A police officer went to Yonkman's residence, but Yonkman was not there. When he returned, the officer read Yonkman his *Miranda* rights. After Yonkman requested counsel, the officer ceased questioning and departed.

¶3 A few days later, Kelly called Detective Rivera to say that her daughter had recanted. Rivera told Kelly that Yonkman could come in and take a polygraph "if he wanted to" so that Rivera could close the investigation. Rivera did not ask her to relay the message, but a few hours later Yonkman called Rivera and scheduled a meeting for April 1 at the police station. During this call, Rivera told Yonkman that he could come to the station if he wanted to, but he would not be under arrest, could leave at any time, and his prior *Miranda* warnings would remain in effect.

¶4 Yonkman arrived at the police station approximately forty minutes early for the April 1 interview. Although the door to the interview room locked automatically, Rivera reminded

2

Yonkman that he was not under arrest and was free to leave. During the interview, Yonkman asked what would happen if he requested an attorney; Rivera responded that they would wait to do the interview until he obtained one. Rivera read Yonkman his *Miranda* rights, and Yonkman consented to questioning. Yonkman confessed after approximately thirty minutes, and officers arrested him at the conclusion of the interview.

¶5 Yonkman moved to suppress the confession based on *Edwards*, the involuntariness of his confession, and the involuntariness of his *Miranda* waiver. After an evidentiary hearing, the superior court ruled the confession admissible, finding that Yonkman had reinitiated contact with Rivera and that Yonkman's interview statements were voluntary. A jury found Yonkman guilty of one count of sexual abuse and one count of sexual conduct with a minor.

¶6 The court of appeals reversed Yonkman's convictions and ordered a new trial, finding Yonkman's confession inadmissible because Rivera had "induce[d]" Yonkman's contact with police and the subsequent interrogation in violation of *Edwards*. *State v. Yonkman*, 229 Ariz. 291, 295 ¶ 14, 298 ¶ 28, 274 P.3d 1225, 1229, 1233 (App. 2012).

¶7 We granted the State's petition for review because this case presents a recurring issue of statewide importance.

We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

### A.  Reinitiation of Contact

¶8      Once a suspect invokes his *Miranda* right to counsel, police may not subject him to custodial interrogation without counsel for fourteen days following his release from custody "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219, 1223 (2010) (quoting *Edwards*, 451 U.S. at 485).  The *Edwards* rule limiting police re-initiation of questioning following the invocation of rights is designed "to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).  It creates a presumption of involuntariness of any resulting waiver that occurs in response to "further police-initiated custodial interrogation even if [the defendant] has been advised of his rights." *Shatzer*, 130 S. Ct. at 1219-20 (quoting *Edwards*, 451 U.S. at 484).  But, "[w]hen a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering." *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009).  Such noncustodial or "noninterrogative interactions with the State do not involve the 'inherently compelling pressures' that one might

4

reasonably fear could lead to involuntary waivers." *Id.* (citation omitted) (quoting *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).

¶9        We assume, without deciding, that Yonkman effectively invoked his *Miranda* right to counsel when first questioned near his residence on March 27, 2010, and that he was in custody then and during the April 1, 2010 interview at the police station. *Cf. Shatzer*, 130 S. Ct. at 1223 ("In every case involving *Edwards*, the courts must determine whether the suspect was in custody when he requested counsel and when he later made the statements he seeks to suppress."). Because Yonkman's confession occurred within fourteen days of his initial invocation of his right to counsel, its admissibility turns on whether Yonkman or the police reinitiated the contact, whether Yonkman knowingly and voluntarily waived his *Miranda* rights, and whether the confession itself was voluntarily given. *See id.* at 1219-22. We review a trial court's ruling on a motion to suppress for abuse of discretion. *State v. Manuel*, 229 Ariz. 1, 4 ¶ 11, 270 P.3d 828, 831 (2011).

¶10        A suspect may reinitiate questioning after terminating it by reopening a dialog with officers about the investigation. *See Edwards*, 451 U.S. at 485-86 & n.9. The United States Supreme Court has not addressed whether police can reinitiate interrogation through contact with third parties. Authority

5

from other jurisdictions is also sparse, but we are not aware of any court that has found an *Edwards* violation in circumstances like those presented here.

¶11 In assessing whether a suspect "initiate[d] a discussion with police through the communication of a third party," the Court of Appeals for the Sixth Circuit found no distinction between direct communications and those from others, concluding that "what is important is [that] the impetus for discussion comes from the suspect himself." *Van Hook v. Anderson*, 488 F.3d 411, 418, 422-23 (6th Cir. 2007). We agree with that court's assessment that the Constitution provides no "protection against friends or family members who convince [a suspect] to talk with police" or "against third-party cajoling, pleading, or threatening." *Id.* at 421.

¶12 Other courts have agreed with the reasoning in *Van Hook*. *See, e.g.*, *Ex parte Williams*, 31 So. 3d 670, 682-83 (Ala. 2009) (noting that "an accused can initiate further interrogation through a third party"); *cf. People v. Lucas*, 548 N.E.2d 1003, 1009-11 (Ill. 1989) (finding no potential *Edwards* violation when suspect submitted to a polygraph after speaking with family members who were asked by officers to "find out . . . what actually happened").

¶13 Several jurisdictions do not find that officers have reinitiated questioning unless the officers' conduct rises to

6

the level of interrogation of the suspect under *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (holding that interrogation under *Miranda* is "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response").  In *Fox v. Ward*, 200 F.3d 1286, 1297-98 (10th Cir. 2000), for example, the court held that the officers had not reinitiated questioning merely by handing their business cards to the suspect after he had requested a lawyer. Instead, the court concluded that the suspect reinitiated contact by indicating that he wanted to talk as the officers were walking away.  *Id.; see also* Wayne R. LaFave et al., 2 Criminal Procedure § 6.9(f) (3d ed. 2012) ("One view, certainly subject to dispute, is that . . . police conduct is not relevant unless it actually amounted to interrogation or its functional equivalent under *Innis*.").

¶14     Even those jurisdictions that might find police initiation based on officer conduct not amounting to full interrogation under *Innis* nonetheless find that incidental "police contacts . . . made for other legitimate purposes concerning the case do not constitute such initiation."  LaFave, *supra* ¶ 13, § 6.9(f); *see also Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983) (plurality opinion) (noting that some inquiries "relating to routine incidents of the custodial

relationship," whether made by the suspect or an officer, do not generally constitute reinitiation).

¶15     Here, the police did not reinitiate contact. Kelly contacted Detective Rivera to report her daughter's recantation. Yonkman argues that Rivera sought to use Kelly to deliver a message to Yonkman that Rivera could not convey directly. He urges us to find this an improper reinitiation under *Edwards*. But Rivera did not call Kelly; he merely answered a telephone call from the person who initially reported the allegations of sexual misconduct. Such an action is far removed from the coercive conduct *Edwards* seeks to prevent. *See Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ("The sole concern of the Fifth Amendment . . . is governmental coercion."). Indeed, Rivera likely had a professional duty to speak with Kelly regarding the alleged recantation. During the conversation, Rivera advised Kelly of the status of the case, but neither asked to speak to Yonkman nor suggested that Kelly have Yonkman call him. The call was therefore not coercive.

¶16     The call Yonkman later initiated to Detective Rivera to set up an interview reopened the dialog between them. *See Edwards*, 451 U.S. at 485-86 & n.9. Moreover, the interview took place one to two days later, giving Yonkman time to reflect on his decision to speak with Rivera.

¶17     Accordingly, the trial court properly found that Yonkman reinitiated the contact.  Neither the purpose nor the policy rationales of *Edwards* would be advanced by suppressing Yonkman's confession.

**B.     Remaining Issues**

¶18     Yonkman raised several arguments that the court of appeals did not address because it found that Yonkman's confession violated *Edwards*.  *See Yonkman*, 229 Ariz. at 294 ¶ 7 n.3, 297-98 ¶¶ 22-27, 274 P.3d at 1228 n.3, 1231-32.  These arguments include that his *Miranda* waiver was involuntary, that Kelly was acting as an agent of the State, that he was improperly precluded from introducing evidence of his acquittal for prior acts, and that prior consistent statements were improperly admitted.  Because we hold that Yonkman's confession did not violate *Edwards*, we remand for the determination of these remaining issues.

## III.  CONCLUSION

¶19     For the foregoing reasons, we vacate the opinion of the court of appeals and remand to that court for further proceedings consistent with this opinion.

_____
Rebecca White Berch, Chief Justice

9

CONCURRING:


_____
Scott Bales, Vice Chief Justice


_____
John Pelander, Justice


_____
Robert M. Brutinel, Justice


_____
Ann A. Scott Timmer, Justice