NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ARIEL VALENZUELA, *Appellant.*

No. 1 CA-CR 18-0429
FILED 9-5-2019

Appeal from the Superior Court in Maricopa County
No.  CR2016-001270-001
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Barbara Hull, Attorney at Law, Phoenix
By Barbara L. Hull
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Maria Elena Cruz joined.

**C A T T A N I**, Judge:

¶1        Ariel Valenzuela appeals his convictions and sentences for first degree murder and promoting prison contraband. He challenges the superior court's denial of his motion to suppress statements he asserts were taken in violation of *Miranda*[1] and made involuntarily. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        While Valenzuela was an inmate at the state prison in Buckeye, he and a group of inmates attacked and killed A.C., a fellow inmate. During the attack, Valenzuela inflicted a fatal stab wound to A.C.'s chest with a "prison-made" weapon. Multiple inmates identified Valenzuela as A.C.'s killer, and Valenzuela eventually admitted his involvement in the attack, including that he stabbed A.C. three times. Nevertheless, Valenzuela claimed his weapon was defective, others had also stabbed A.C., and that he was not responsible for A.C.'s death. The State charged Valenzuela with first degree murder and promoting prison contraband.

¶3        Before trial, Valenzuela moved to suppress statements taken in violation of *Miranda* and requested a voluntariness hearing. The superior court conducted an evidentiary hearing and heard testimony from criminal investigations unit ("CIU") investigators, who had spoken with Valenzuela three times during their investigation, and from special security unit ("SSU") correctional officers, who had spoken with him twice during their administrative investigation.

¶4        CIU investigators first attempted to speak with Valenzuela the night of the murder. After being provided *Miranda* warnings, Valenzuela invoked his right to counsel and all questioning ceased. The next morning, an SSU officer transported Valenzuela from his housing unit

---

[1]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

to an SSU office, but Valenzuela refused to speak with the officer. Before being transported back to his housing unit, Valenzuela asked to speak with a specific SSU officer and claimed to have "game changing information." Valenzuela then admitted to his involvement in the attack but insisted he was not A.C.'s killer.

¶5        Fourteen days later, CIU investigators asked to speak with Valenzuela again, but he refused.   In the final CIU interview more than a year later, after reaching out to investigators, Valenzuela waived his *Miranda* rights, and largely repeated the statements he made to the SSU investigators. Valenzuela requested that CIU place him in protective custody in exchange for his statements. CIU investigators indicated that they could make a recommendation to prison officials, but that they had no control over his housing status and could make no promises.

¶6        The superior court heard argument and denied the motion to suppress, finding that Valenzuela had reinitiated contact with law enforcement and that his statements were voluntary. At trial, the court allowed the State to present Valenzuela's statements from the second SSU interview and the final CIU interview.

¶7        A jury returned guilty verdicts on both counts and found two aggravating factors as to the promoting prison contraband offense. The superior court found Valenzuela had multiple prior felony convictions and sentenced him to concurrent terms, the longest of which is life imprisonment without the possibility of release. Valenzuela timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A).

## DISCUSSION

### I.        Alleged *Miranda* Violation.

¶8        Valenzuela argues the superior court abused its discretion by refusing to suppress statements taken in violation of *Miranda*. Valenzuela claims that SSU's initial interview violated *Miranda*, and any subsequent statements should have been suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963). We review a ruling on a motion to suppress for abuse of discretion; we defer to the court's factual findings but consider the court's legal conclusions de novo. *State v. Peterson*, 228 Ariz. 405, 407–08, ¶ 6 (App. 2011). We consider only evidence presented at the suppression hearing, and we view the facts in the light most favorable to upholding the court's ruling. *State v. Naranjo*, 234 Ariz. 233, 238, ¶ 4 (2014).

¶9 To safeguard the privilege against compulsory self-incrimination, *Miranda* requires that law enforcement advise suspects of their rights before conducting a custodial interrogation. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 10 (2016). When a suspect invokes his right to counsel, law enforcement may not subject him to further questioning without counsel present until after a 14-day break in custody. *Maryland v. Shatzer*, 559 U.S. 98, 109–11 (2010); *Edwards v. Arizona*, 451 U.S. 477, 482–85 (1981). There can be a break in custody for these purposes even if the suspect remains incarcerated for a prior conviction. *Shatzer*, 559 U.S. at 112–14. And a suspect may waive this requirement by reinitiating communication with law enforcement. *Edwards*, 451 U.S. at 484–85; *see also State v. Yonkman*, 231 Ariz. 496, 498, ¶ 8 (2013). To constitute a valid waiver, the suspect need only express "a desire for a generalized discussion about the investigation"; an explicit waiver statement is not required. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983); *see also North Carolina v. Butler*, 441 U.S. 369, 375–76 (1979).

¶10 Although Valenzuela invoked his right to counsel in the initial CIU interview, he reinitiated contact with SSU the next day and expressed a desire to give his version of events. Similarly, more than a year later, Valenzuela reinitiated contact with CIU, waived his *Miranda* rights, and, once again, gave his version of events. In both instances, Valenzuela maintained that he was not ultimately responsible for A.C.'s murder, admitting only that he was involved in the attack and possessed a weapon. The record does not show that these statements were the product of coercive conduct by either unit; Valenzuela appears to have understood his *Miranda* rights, and he personally initiated the discussions during which he provided information regarding the attack on A.C..

¶11 Moreover, assuming SSU's failure to wait 14 days before contacting Valenzuela was improper, the unit's initial attempt to speak with Valenzuela did not yield a confession. The only statements admitted at trial were obtained after Valenzuela reinitiated contact and provided a valid waiver of his rights. There is no indication from the record that SSU's conduct so tainted all subsequent voluntary statements to warrant suppression. *State v. Fulminante*, 161 Ariz. 237, 246 (1988) (holding voluntary confession admissible if the taint of prior constitutional violation sufficiently attenuated).

¶12 Finally, even if Valenzuela's statements to SSU had been taken in violation of *Miranda* and admitted in error, the error was harmless. *See State v. Montes*, 136 Ariz. 491, 497 (1983) (applying harmless error analysis to the improper admission of statements at trial). "A constitutional

error is harmless if it can be said beyond a reasonable doubt that the error had no influence on the verdict of the jury." *Id.* Valenzuela's statements in the final CIU interview, made over one year later, were free of any coercive effects of SSU's contact and were admissible at trial. *See Fulminante*, 161 Ariz. at 246. Had the potentially tainted statements to SSU been suppressed, the jury would have nonetheless heard Valenzuela's inculpatory statements, along with substantial eye-witness testimony that he was A.C.'s killer.

¶13 Accordingly, the superior court did not abuse its discretion by rejecting Valenzuela's *Miranda* argument.

## II. Alleged Involuntariness.

¶14 Valenzuela argues his statements were involuntary because of the restrictions and dangers associated with being an inmate, coercive conduct by SSU and CIU, and alleged promises made by CIU. We review the superior court's determination of voluntariness for abuse of discretion, *State v. Jones*, 203 Ariz. 1, 5, ¶ 8 (2002), and consider the totality of the circumstances surrounding the challenged confession. *State v. Stanley*, 167 Ariz. 519, 524 (1991). We start with the rebuttable presumption that a confession made within the context of a custodial interrogation is inherently involuntary. *State v. Jimenez*, 165 Ariz. 444, 448–49 (1990).

¶15 A confession is involuntary if (1) prompted by impermissible police conduct, (2) attributable to coercive pressures that have not been dispelled, or (3) derived directly from a prior involuntary statement. *State v. Amaya-Ruiz*, 166 Ariz. 152, 164 (1990). Typically, a promise of leniency or another benefit, even by implication, is impermissibly coercive. *State v. Lopez*, 174 Ariz. 131, 138 (1992). The evidence, however, must show the promise was in fact made and relied upon by the suspect. *Id.* It is not enough that a promise was made "couched in terms of a mere possibility." *State v. McVay*, 127 Ariz. 18, 20 (1980).

¶16 Here, the evidence shows that Valenzuela understood his *Miranda* rights, expressed a desire to speak with SSU and CIU, and spoke with both units after making that request. Without more, the pressures inherent in incarceration do not demonstrate an atmosphere of coercion. *See Shatzer*, 559 U.S. at 112–14. Moreover, CIU officers explicitly refused to make any promises to Valenzuela regarding protective custody and noted their lack of control over his housing status. The simple offer to provide a housing recommendation to prison officials was not impermissibly coercive. *See State v. Tapia*, 159 Ariz. 284, 290–91 (1988).

5

¶17       We conclude, based on the totality of circumstances, that the superior court did not abuse its discretion by finding that Valenzuela's statements were voluntary.

## CONCLUSION

¶18       For the foregoing reasons, we affirm Valenzuela's convictions and sentences.

