IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee,*

*v.*

DAVID JAMES YONKMAN,
*Appellant.*

No. 2 CA-CR 2010-0338
Filed November 20, 2013

———————————————

Appeal from the Superior Court in Pima County
No. CR20101253001
The Honorable John S. Leonardo, Judge

**AFFIRMED**

———————————————

COUNSEL

Thomas C. Horne, Arizona Attorney General
By Joseph T. Maziarz, Section Chief Counsel, Phoenix
and Alan L. Amann, Assistant Attorney General, Tucson

*Counsel for Appellee*

Lori J. Lefferts, Pima County Public Defender
By David J. Euchner and Lisa M. Hise, Assistant Public Defenders,
Tucson

*Counsel for Appellant*

------

**OPINION**

------

Judge Eckerstrom authored the opinion of the Court, in which Judge Vásquez and Judge Brammer[1]concurred.

------

E C K E R S T R O M, Judge:

**¶1** This case comes to us on remand from *State v. Yonkman*, 231 Ariz. 496, ¶ 19, 297 P.3d 902, 905 (2013), *vacating* 229 Ariz. 291, 274 P.3d 1225 (App. 2012). Appellant David Yonkman was convicted of sexual abuse and sexual conduct with a minor based on acts he had committed against his stepdaughter, C. The remaining issues to be decided on appeal are (1) whether his statements to police should have been suppressed because his *Miranda*[2] waiver had been involuntary and his wife had acted as an agent of the state; (2) whether the trial court erred by admitting prior acts for which Yonkman had been acquitted or by precluding evidence of his acquittals; and (3) whether prior consistent statements had been admitted improperly. Finding no reversible error, we affirm.

**Factual and Procedural Background**

**¶2** We view the facts in the light most favorable to upholding the convictions. *State v. Fontes*, 195 Ariz. 229, ¶ 2, 986 P.2d 897, 898 (App. 1998). In March 2010, fifteen-year-old C. told her mother, and Yonkman's wife, Kelly, that he had "been touching [C.] inappropriately." Kelly reported the allegations to police, and C. underwent a forensic interview in which she repeated the

------

[1]A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Administrative Order No. 2012-101 filed December 12, 2012.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

allegations. Kelly later contacted a detective to report that her daughter had recanted. Although Yonkman initially invoked his rights pursuant to *Miranda* when he was detained by a police officer, he talked to Kelly after his release and then called a detective to arrange an interview at a police station. There, Yonkman admitted he had touched C. on her breasts and vagina.

**¶3** At trial, C. testified about two separate incidents in which she had awoken to find her pants off, her underwear around her ankles, and Yonkman fondling her breasts and/or her vagina. Over Yonkman's objection, the state also presented the testimony of two of C.'s friends who allegedly had been molested by him during sleepovers at the Yonkman home. The trial court refused to allow Yonkman to introduce evidence that he had been acquitted of charges stemming from these allegations. After being convicted, he was sentenced to a mitigated term of four years' imprisonment for sexual conduct with a minor, followed by lifetime probation for sexual abuse.

## Motion to Suppress

**¶4** Before trial, Yonkman filed a motion to suppress on the grounds that both his *Miranda* waiver and his confession had been involuntary. On appeal, however, he challenges the trial court's ruling only as to his waiver of rights pursuant to *Miranda* and *Edwards v. Arizona*, 451 U.S. 477 (1981). "We review a ruling on the motion to suppress for an abuse of discretion if it involves a discretionary issue, but review constitutional and purely legal issues de novo." *State v. Allen*, 216 Ariz. 320, ¶ 11, 166 P.3d 111, 114 (App. 2007). We limit our review to the evidence presented at the suppression hearing and view the facts in the light most favorable to upholding the trial court's ruling. *Id.* ¶ 2.

**¶5** The facts pertinent to this issue are set forth more fully in our supreme court's decision. *See Yonkman*, 231 Ariz. 496, ¶¶ 2-4, 297 P.3d at 903. Yonkman contends the detective in this case violated his right to counsel by suggesting to Kelly that he come to the police station for a polygraph test in order to close the case. Relying on *Maryland v. Shatzer*, 559 U.S. 98, 110 (2010), Yonkman argues his invocation of his right to counsel less than fourteen days

earlier made the subsequent waiver of that right presumably involuntary, unless he reinitiated contact with the police. Our supreme court, however, has held that Yonkman reinitiated contact in this case, not the police. *Yonkman*, 231 Ariz. 496, ¶¶ 15, 17, 297 P.3d at 905. The court determined that Kelly's telephone conversation with the detective that prompted this reinitiation "[was] far removed from the coercive conduct *Edwards* seeks to prevent." *Id.* ¶ 15. And when, as our supreme court determined was the case here, "the suspect reinitiates contact with the police, he waives his rights and questioning can continue." *State v. Smith*, 193 Ariz. 452, ¶ 22, 974 P.2d 431, 437 (1999).

¶6 Although Yonkman voluntarily reinitiated contact with the police, the interviewing detective gave Yonkman another *Miranda* warning before the interview. He stated he understood his rights and agreed to answer the detective's questions. Thus, at any time during the interview, Yonkman could have invoked his right to counsel. *See Edwards*, 451 U.S. at 484-85. Although Yonkman inquired about his right to counsel, he never unambiguously stated he wanted a lawyer present; therefore, the detective lawfully continued the interview. *See State v. Newell*, 212 Ariz. 389, ¶ 25, 132 P.3d 833, 841 (2006) ("If a reasonable officer in the circumstances would have understood only that the defendant *might* want an attorney, then questioning need not cease."); *see also Davis v. United States*, 512 U.S. 452, 459 (1994) (holding objectively ambiguous statement insufficient to invoke right to counsel). On the record before us, we find the waiver of his rights was valid. *See Shatzer*, 559 U.S. at 104.

¶7 Alternatively, Yonkman argues the detective enlisted Kelly as an instrument or agent of the state in an effort to elicit statements from Yonkman, despite his invocation of the right to counsel several days earlier. Although *Shatzer* aims to prevent governmental badgering after a suspect invokes the right to counsel, our supreme court has held, "[T]he Constitution provides no 'protection against friends or family members who convince [a suspect] to talk with police' or 'against third-party cajoling, pleading, or threatening.'" *Yonkman*, 231 Ariz. 496, ¶¶ 8, 11, 297 P.3d at 904, *quoting Van Hook v. Anderson*, 488 F.3d 411, 421 (6th Cir. 2007) (alteration in *Yonkman*); *cf. Coolidge v. New Hampshire*, 403 U.S.

4

443, 489-90 (1971) (finding no constitutional protection "against the adverse consequences of a spontaneous, good-faith effort by [suspect's] wife to clear [defendant] of suspicion"). In light of our supreme court's determination that the police did not reinitiate contact in this case, *Yonkman*, 231 Ariz. 496, ¶ 15, 297 P.3d at 905, his agency argument would appear to be foreclosed by that opinion. Our high court's analysis was based on the premise that Kelly acted as a third party when she spoke to Yonkman after he had invoked his rights, *see id.* ¶¶ 10-12, and any finding that she acted as an agent of the state would conflict with that decision.

¶8        Nevertheless, because our supreme court expressly identified Kelly's status as an issue for our determination on remand, *id.* ¶ 18, we independently address the issue. We conclude the trial court did not err in rejecting Yonkman's contention that Kelly was acting as an agent of the state. "Whether a private person acted as a state agent is 'a fact-intensive inquiry that is guided by common law agency principles.'" *State v. Martinez*, 221 Ariz. 383, ¶ 14, 212 P.3d 75, 79 (App. 2009), *quoting United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003); *see also State v. Estrada*, 209 Ariz. 287, ¶ 17, 100 P.3d 452, 456 (App. 2004) ("Whether a private citizen acted as a state agent is determined on a case-by-case basis . . . ."). Under the common law, agency is a "consensual relationship in which one person . . . acts on behalf of another person"; the agent has certain powers, such as the "authority to negotiate or to transmit or receive information on the [other's] behalf"; and "the person represented has a right to control the actions of the agent." Restatement (Third) of Agency § 1.01 cmt. c (2006). Even in the absence of an express principal-agent relationship, the circumstances of a particular case may give rise to an implied agency. *Canyon State Canners v. Hooks*, 74 Ariz. 70, 73, 243 P.2d 1023, 1024 (1952). The numerous factors to consider when determining agency include a person's purpose or motive in acting and whether law enforcement provided any reward. *See United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006); *United States v. McAllister*, 18 F.3d 1412, 1417-18 (7th Cir. 1994).

¶9        Here, Kelly initiated the contact with the detective, and only then did the detective suggest that Yonkman voluntarily submit to a polygraph test. The detective neither ordered nor

coerced Kelly to relay any information to Yonkman. Further, the detective offered Kelly no reward apart from the possibility of closing the investigation, which, if Yonkman were innocent and if C.'s recantation were true, would have been in her own family's interests. Overall, the evidence suggested that Kelly acted as a concerned spouse and mother, not an agent subject to law enforcement control. Under these circumstances, we conclude the trial court did not abuse its discretion in declining to find Kelly acted as an agent of the state. Nor did the court otherwise abuse its discretion in denying the motion to suppress.

## Other-Act Evidence

### Acquitted Conduct

¶10     Yonkman next argues the trial court abused its discretion by admitting other-act evidence when he "had been acquitted by a jury of the alleged acts." We review the admission of other-act evidence for an abuse of discretion. *State v. Lehr*, 227 Ariz. 140, ¶ 19, 254 P.3d 379, 386 (2011). Before trial, the state filed a notice of intent to introduce evidence of prior allegations by two of C.'s friends that Yonkman had molested them. Yonkman moved to preclude the evidence, but the court admitted it under both Rule 404(b) and (c), Ariz. R. Evid., to show "motive, intent, plan, or absence of mistake or accident; or that the defendant had a character trait that predisposed him to commit the crime charged; or both."

¶11     Rule 404(b) allows the admission of evidence of "other crimes, wrongs, or acts" for purposes that include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In cases involving sexual offense charges, Rule 404(c) allows courts to admit evidence of "other crimes, wrongs, or acts . . . if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Before other-act evidence may be admitted under either rule, the trial court must find by clear and convincing evidence that the defendant committed the act. *State v. Aguilar*, 209 Ariz. 40, ¶ 30, 97 P.3d 865, 874 (2004); *State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997). The court also must find the other-act evidence "is relevant and . . . its probative value is

not substantially outweighed by unfair prejudice." *State v. Garcia*, 224 Ariz. 1, ¶ 33, 226 P.3d 370, 380 (2010); *see also Aguilar*, 209 Ariz. 40, ¶ 30, 97 P.3d at 874. Under either Rule 404(b) or Rule 404(c), the court must give the jury an appropriate limiting instruction if the defendant so requests. *Garcia*, 224 Ariz. 1, ¶ 33, 226 P.3d at 380; *Aguilar*, 209 Ariz. 40, n.11, 97 P.3d at 874 n.11.

**¶12** Yonkman does not argue the trial court erred in its application of Rule 404(b) and (c). Rather, he argues the other-act evidence here should have been precluded because a jury acquitted him of those acts, and such acquitted-conduct evidence is inadmissible pursuant to our supreme court's opinion in *State v. Little*, 87 Ariz. 295, 350 P.2d 756 (1960). In that case, the court found evidence of acquitted conduct to be inadmissible, reasoning that "[a] verdict of acquittal should relieve the defendant from having to answer again, at the price of conviction for that crime or another, evidence which amounts to a charge of a crime of which he has been acquitted." *Id.* at 307, 350 P.2d at 764.

**¶13** We do not find *Little* to be controlling on this issue, for at least two related reasons. First, *Little* contains no discussion of the "clear and convincing" standard that now governs the admission of other-act evidence. *See* Ariz. R. Evid. 404 cmt. to 1997 amend.; *see also Terrazas*, 189 Ariz. at 582-83, 944 P.2d at 1196-97 (suggesting *State v. Hughes*, 102 Ariz. 118, 426 P.2d 386 (1967), established clear and convincing standard prior to adoption of Arizona Rules of Evidence). Perhaps as a result, *Little* never has been applied to preclude acquitted conduct in Arizona under Rule 404. *See, e.g.*, *State v. Miller*, 129 Ariz. 465, 468, 632 P.2d 552, 555 (1981) (distinguishing *Little*); *State v. Uriarte*, 194 Ariz. 275, ¶¶ 33-37, 981 P.2d 575, 581-82 (App. 1998) (analyzing admission of acquitted conduct without reference to *Little*); *State v. Davis*, 127 Ariz. 285, 286 n.1, 619 P.2d 1062, 1063 n.1 (App. 1980) (noting *Little* arguably limited to facts before it).

**¶14** Second, subsequent case law has undermined the res judicata or collateral estoppel rationale supporting the *Little* decision. *See* 87 Ariz. at 304-05, 307, 350 P.2d at 761-62, 764. As the Supreme Court established in *Dowling v. United States*, the admission of testimony about acquitted conduct is not barred categorically by

the Double Jeopardy Clause or the Due Process Clause of the United States Constitution when such evidence is governed by a lesser standard than proof beyond a reasonable doubt. 493 U.S. 342, 343-44, 348 (1990). In *Dowling*, the Court suggested that collateral estoppel based on an earlier acquittal could depend on a case-by-case analysis that would require a defendant to prove, from the entire record, that "the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Id.* at 350. But, as the Court later clarified in *United States v. Watts*, "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge." 519 U.S. 148, 155 (1997) (per curiam). A "jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty," *id.*, meaning an acquittal carries no preclusive effect under a lesser evidentiary standard. Albeit without citing *Little*, our state supreme court has suggested in dicta that *Dowling* has, at minimum, reopened the question of admitting acquitted conduct under Arizona law. *Terrazas*, 189 Ariz. at 584 n.3, 944 P.2d at 1198 n.3.

¶15 A majority of state jurisdictions now allows a trial court to admit acquitted conduct under their own rules of evidence. *E.g.*, *People v. Wallen*, 996 P.2d 182, 185 (Colo. App. 1999); *State v. Irons*, 630 P.2d 1116, 1118 (Kan. 1981); *see* Christopher Bello, Annotation, *Admissibility of Evidence as to Other Offense as Affected by Defendant's Acquittal of that Offense*, 25 A.L.R. 4th 934 §§ 2[a], 5 (1983 & Supp. 2008) (collecting cases). In accord with those cases, we conclude an acquittal does not bar the introduction of other-act evidence under Rule 404, because such evidence involves a lesser standard of proof, and "the earlier acquittal could be based upon the failure of the state to have proved the prior bad acts beyond a reasonable doubt." *Terrazas*, 189 Ariz. at 584 n.3, 944 P.2d at 1198 n.3.

¶16 As noted, Yonkman does not challenge the admission of the evidence on the ground the trial court incorrectly applied Rule 404(b) and (c). We therefore conclude the court did not err by allowing evidence of the other acts in this case, even though Yonkman had been acquitted of them.

**Fact of Acquittal**

**¶17**        Yonkman further contends that if prior acquitted conduct is admissible under Rule 404, the jury should be allowed to consider such evidence in light of the acquittal.  We generally review the preclusion of evidence for an abuse of discretion.  *See State v. Villalobos*, 225 Ariz. 74, ¶ 33, 235 P.3d 227, 235 (2010).  Although the fact of an acquittal sometimes is established through a jury instruction rather than the admission of evidence, *e.g.*, *Dowling*, 493 U.S. at 342-43, this difference in presentation is immaterial to our analysis.

**¶18**        To support his position, Yonkman primarily relies on *Davis*, 127 Ariz. at 286, 619 P.2d at 1063, in which this court summarily held that "the better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime." "[W]e consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable." *Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974); *accord State v. Hickman*, 205 Ariz. 192, ¶¶ 37-38, 68 P.3d 418, 426-27 (2003). Thus, we will not disregard *Davis*, as the state suggests.

**¶19**        Rather, we read *Davis* in harmony with our rules of evidence, *see Terrazas*, 189 Ariz. at 583, 944 P.2d at 1197, which provide that a trial court ultimately has the discretion to admit or preclude evidence after deciding whether its probative value outweighs its potential for unfair prejudice.  *See* Ariz. R. Evid. 401, 403; *State v. Connor*, 215 Ariz. 553, ¶¶ 33-34, 161 P.3d 596, 606 (App. 2007).  A survey of other jurisdictions reveals that "[n]early all trial courts have adopted a case-by-case approach in analyzing requests by the defendant for an acquittal instruction." *Kinney v. People*, 187 P.3d 548, 555 (Colo. 2008); *see, e.g.*, *Hess v. State*, 20 P.3d 1121, 1125, 1127-29 (Alaska 2001); *People v. Bedoya*, 758 N.E.2d 366, 381-82 (Ill. App. Ct. 2001).

**¶20**        The state argues that evidence of acquittal is (1) irrelevant, because the acquittal constitutes a prior jury's conclusion based on a different standard of proof; and (2) confusing, because

the later jury may incorrectly think itself bound by the prior jury's conclusion in assessing the acquitted conduct. Courts have precluded the fact of acquittal for those reasons. *See, e.g., United States v. Wells*, 347 F.3d 280, 285-86 (8th Cir. 2003) (acquittal irrelevant to prove innocence on current charge); *People v. Bolden*, 296 N.W.2d 613, 617 (Mich. Ct. App. 1980) (fact of acquittal risks misleading jurors into thinking "defendant absolutely did not commit" other acts).[3]

**¶21** We acknowledge the validity of those concerns, but we also recognize that, in cases "where the jury has heard details of prior trials or criminal investigations such that the jury may speculate that the defendant has been tried and convicted of these prior acts," the lack of an acquittal instruction creates a pronounced risk of juror confusion adverse to the defendant. *Kinney*, 187 P.3d at 557-58; *accord People v. Ward*, 952 N.E.2d 601, ¶¶ 45, 48 (Ill. 2011). Furthermore, any risk that the jury will give undue weight to the prior acquittal can be remedied by instructing the jury to evaluate such evidence independently. *See Kinney*, 187 P.3d at 558; *accord Ward*, 952 N.E.2d 601, ¶ 47. We therefore find guidance in the rule set forth by the Colorado Supreme Court in *Kinney* that

> [a]n acquittal instruction is appropriate when the testimony or evidence presented at trial about the prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act and may be speculating as to the defendant's guilt or innocence in that prior trial.

187 P.3d at 557. Any evidence of acquittal, of course, still must be admitted properly under Rules 401 and 403. But *Davis* reflects the reality that when evidence of acquitted conduct is presented, the fact

---

[3]Some courts also have excluded the evidence on the ground that a judgment of acquittal is hearsay. *See, e.g., Wells*, 347 F.3d at 286. But such a judgment presumably would qualify for admission under the public record exception to the hearsay rule. *See* Ariz. R. Evid. 803(8); *Kinney*, 187 P.3d at 557.

of the acquittal often becomes admissible under these rules. *See* 127 Ariz. at 286, 619 P.2d at 1063.

**¶22** This case illustrates the point. Here, the trial court attempted to prevent the jury from learning of the prior trial or its verdict, prohibiting mention of an earlier "trial" or "arrest." Yet the jury learned that Yonkman previously had been reported to the police, the police had taken statements from his other two victims, and a children's advocacy worker had conducted videotaped interviews with them. The presentation of the other-act evidence in this trial demanded that both parties repeatedly refer to prior transcripts and "testimony." The parties also referred to the other victims coming "down here" to "Court" to provide that testimony, suggesting there had been a "hearing" in a previous "case." In fact, one of the victims inadvertently violated the court's restriction by referring to an incident that had happened "after the court trial." But even without this confirmation, common sense and natural inferences would lead anyone to conclude there had been an earlier trial. So the ruling here, though well intentioned, served only to confuse the jury about the former proceedings and to cause speculation about the outcome of the prior trial, to Yonkman's detriment. *See State v. Alvarez*, 228 Ariz. 579, ¶ 27, 269 P.3d 1203, 1210 (App. 2012) (Eckerstrom, P.J., dissenting) (observing "'a jury can . . . be confused in its deliberations by the preclusion of relevant evidence' as much as by the admission of irrelevant evidence"), *quoting State v. Machado*, 224 Ariz. 343, ¶ 22, 230 P.3d 1158, 1169 (App. 2010), *aff'd*, 226 Ariz. 281, ¶ 26, 246 P.3d 632, 637 (2011).

**¶23** In addition, precluding the fact of acquittal also risks unduly limiting cross-examination and the development of issues concerning a witness's potential motives and credibility. *See, e.g.*, *State v. Briley*, 106 Ariz. 397, 398-99, 476 P.2d 852, 853-54 (1970) (precluding inquiry into prior trial where witness testified violated defendant's right to cross-examine witness and show possible bias and motivation). The restriction here had this effect. One of the other-act victims admitted on cross-examination that she first had reported her allegations to police when an officer had responded to a call concerning a fight between Yonkman's son and herself. Absent the trial court's limitation, Yonkman could have further supported a fabrication defense against this accusation by

11

suggesting that "in order to avoid perjury [the witness] was motivated to testify similarly" at the current trial. *Id.* at 399, 476 P.2d at 854. In addition, the other victim testified that she was afraid of "[p]eople calling [her] a liar" and that she "wanted [Yonkman] to pay for what he did to [her]." If the jury had known Yonkman had been acquitted of charges based on this victim's allegations, he could have cast her testimony in a very different and less damaging light.

¶24 Although we conclude for these reasons that the trial court abused its discretion by precluding evidence of Yonkman's acquittals, we nevertheless find the error harmless in the context of the case. An error is harmless if a reviewing court can determine, beyond a reasonable doubt, that it neither affected nor contributed to the verdict. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). Given that Yonkman admitted in his interview with police that he had touched C. on her breasts and vagina, thereby corroborating her claims concerning the charges of which he was convicted, we conclude the error did not affect the verdicts.

¶25 At oral argument, Yonkman suggested the error was not harmless because the jury may have concluded his confession to police was involuntary, as the product of an implied or implicit promise from police to close the case if he gave a statement.[4] But Yonkman presented no argument to the jury at trial suggesting his confession had been induced by such a promise. Our harmless error analysis thus is unaffected by any alleged improper statements made by the detective, as we conclude beyond a reasonable doubt that such statements, in context, would not have influenced the jury's verdicts.

---

[4]As we indicated above, Yonkman did not present an argument in his opening brief that his confession was involuntary, and the issue therefore has been abandoned as a freestanding claim for appellate relief. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi); *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (failure to develop argument waives claim on appeal); *see also State v. Amaya-Ruiz*, 166 Ariz. 152, 172, 800 P.2d 1260, 1280 (1990) (observing "[v]oluntariness and *Miranda* are separate legal issues").

**Prior Consistent Statements**

**¶26** Finally, Yonkman argues the trial court erred in admitting prior consistent statements of C. and A., a victim in the prior case. Pursuant to Rule 801(d)(1)(B), Ariz. R. Evid.,[5] prior consistent statements are admissible as nonhearsay "to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." For a prior consistent statement to be admissible, the statement must have been made before the motive to fabricate arose. *State v. Martin*, 135 Ariz. 552, 553, 663 P.2d 236, 237 (1983).

**¶27** Specifically, Yonkman contends that Kelly "was allowed to testify . . . that C[.] had told her that [he] had touched her inappropriately," and a "forensic interviewer . . . was also allowed to testify what C[.] told her," despite there being "no allegation of recent fabrication." The state also elicited that A. had made prior consistent statements despite "no allegation of recent fabrication." The state does not dispute Yonkman's claims that the evidence does not qualify as nonhearsay under Rule 801(d)(1)(B), but rather argues any error was harmless because both girls testified regarding the very same statements. We agree the alleged errors were harmless because both girls were subject to later cross-examination as to those statements and because, as noted above, the jury heard evidence that Yonkman ultimately confessed to touching C. on the breasts and vagina. Any error in admitting the statements therefore did not affect the verdicts in this case. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191.

**Disposition**

**¶28** For the foregoing reasons, Yonkman's convictions and sentences are affirmed.

---

[5]We cite the provision in effect during Yonkman's 2010 trial; it has undergone stylistic changes since then. *See* Ariz. R. Evid. prefatory cmt. to 2012 amends.