NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

SHAUN MARZINE HUDSON, JR.,
*Appellant*.

No. 1 CA-CR 14-0132
FILED 11-17-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-111248-001
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza Ybarra
*Counsel for Appellee*

Ballecher & Segal, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

**¶1**        Shaun Hudson appeals his convictions for aggravated assault, a class 3 dangerous felony; unlawful imprisonment, a class 6 felony; disorderly conduct, a class 6 dangerous felony; assault, a class 3 misdemeanor; assault, a class 1 misdemeanor; disorderly conduct, a class 1 misdemeanor; and preventing the use of a telephone in an emergency, a class 2 misdemeanor.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Hudson and S.P. married in 2008, and S.P. filed for divorce in February 2013.  In March 2013, S.P. started a new job.  Hudson agreed to watch their children at her house while she was at work.  On March 8, 2013, Hudson and S.P. were involved in a domestic dispute and the police were called.  Hudson left before police arrived, but later that day turned himself in to police.  During a taped interview, Avondale Police Department Detective Heatherington read Hudson his *Miranda*[1] rights and asked:

> Q: Are you willing to answer some questions for me?
>
> A: Some, yeah.
>
> Q: Okay.
>
> A: I feel like I should have an attorney.

After a pause, Detective Heatherington continued the interview and asked "what happened this morning?" Hudson then confessed.

**¶3**        During trial, the State attempted to have the recorded interview admitted into evidence and used Detective Kalcum to lay the foundation for its admission.  Hudson objected based on the best evidence

---

[1]        *See Miranda v. Arizona*, 384 U.S. 436 (1966).

rule,[2] arguing that Detective Kalcum—who merely monitored Hudson's interview—was not present for the first ten minutes of the interview.[3] Therefore, Hudson argued that Detective Kalcum should only testify as to those portions of the interview that she actually observed. However, Hudson then stipulated to the admission of the entire interview, indicating, "I would rather [the interview] be played in full context than just the portion that [Detective Kalcum monitored]." The interview was then played for the jury.[4] Hudson was found guilty and timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031, and -4033.A.1 (West 2015).[5]

## DISCUSSION

**¶4**　　　　On appeal, Hudson asserts that the trial court should have sua sponte suppressed the recorded interview because Detective Heatherington continued questioning him after he requested an attorney. Hudson, however, did not move to suppress the interview before or during trial. Hudson's failure to assert his alleged invocation of the right to counsel at the trial court normally would preclude appellate review. *See State v. Newell*, 212 Ariz. 389, 398, ¶ 34 (2006); *see also State v. Tison,* 129 Ariz. 526, 535 (1981) (stating that "[i]ssues concerning the suppression of evidence which were not raised in the trial court are waived on appeal"). However, we may review a suppression argument that is raised for the first time on appeal for fundamental error. *State v. Cañez,* 202 Ariz. 133, 151, ¶ 51 (2002). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19 (2005).

---

[2]　　　　*See* Ariz. R. Evid. 1002.

[3]　　　　The interviewer, Detective Heatherington, was unavailable as a witness for trial.

[4]　　　　Although the parties stipulated to playing the entire interview, the interview had already been partially redacted by the parties. The redacted version of the interview was played at trial.

[5]　　　　We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

¶5        When we review for fundamental error, the defendant has the burden of persuasion.  *Id.*  To prevail, the defendant "must establish both that fundamental error exists and that the error in his case caused him prejudice."  *Id.*; *see also State v. Hunter,* 142 Ariz. 88, 90 (1984) (noting that defendant must prove fundamental error of such magnitude that it prevented a fair trial).  "We view the facts in the light most favorable to upholding the conviction."  *State v. Yonkman*, 233 Ariz. 369, 371, ¶2 (App. 2013).

I.        Fundamental Error

¶6        The Fifth and Fourteenth Amendments to the United States Constitution provide that a suspect has a right against self-incrimination, which includes the right to counsel during a custodial interrogation.  *Miranda v. Arizona*, 384 U.S. at 478–79.  If a suspect requests counsel, "the interrogation must cease until an attorney is present."  *Id.* at 474.  However, "law enforcement officers may continue questioning until and unless the suspect *clearly* requests an attorney."  *Davis v. United States*, 512 U.S. 452, 461 (1994) (emphasis added).

¶7        Determining whether a suspect has invoked the right to counsel is an objective inquiry, and invocation requires "some statement that can reasonably be construed to be an expression of a desire" for an attorney.  *Id.* at 459 (citation omitted).  Thus, the defendant must unequivocally request counsel before an officer is required to cease questioning.  *Id.*  By comparison, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer *in light of the circumstances* would have understood only that the suspect *might* be invoking the right to counsel," police can continue questioning.  *Id.* (first emphasis added).

¶8        For example, the statement "[m]aybe I should talk to a lawyer" was held to be an equivocal request for counsel.  *Id.* at 461–62.  Therefore, police were not required to cease questioning.  *Id.*; *see also State v. Eastlack*, 180 Ariz. 243, 250–51 (1994) (holding that "I think I better talk to a lawyer first" was equivocal); *State v. Ellison*, 213 Ariz. 116, 127, ¶ 29 (2006) (finding that "I think I might want an attorney" was equivocal).   On the other hand, the statement "if you're going to pursue this and try to pin it on me, I want a lawyer because I'm not going to say nothing else until I can talk to a lawyer" was an unequivocal request for counsel requiring officers to cease questioning.  *State v. Spears*, 184 Ariz. 277, 286 (1996); *see also State v. Finehout*, 136 Ariz. 226, 230 (1983) (finding that "I'm not going to say anymore until I talk to a lawyer" was unequivocal).

¶9 We conclude that no error, much less fundamental error, occurred because Hudson did not unequivocally invoke the right to counsel. Hudson's statements are similar to the statements in *Davis*, *Eastlack*, and *Ellison*. The court in those cases held that the defendants' statements were equivocal because they did not clearly articulate the request for counsel, and thus did not invoke the right. *See Davis*, 512 U.S. at 461–62; *Eastlack*, 180 Ariz. at 250–51; *Ellison*, 213 Ariz. at 127, ¶ 29. In the same way, Hudson's statement "I feel like I should have an attorney" was equivocal; it indicated only that Hudson *might* be invoking his right to counsel.[6] *See Davis*, 512 U.S. at 459.

¶10 Moreover, viewing Hudson's statements in light of the circumstances further underscores their ambiguity. *See id.* Hudson's willingness to answer "some" questions even though he "[felt] like [he] should have an attorney" was contradictory. As a result, a reasonable officer would consider the statements equivocal. *See Newell*, 212 Ariz. at 397-98, ¶ 32 (reasoning that a suspect's contradictory statements render a request for counsel equivocal).[7]

¶11 Without citing authority, Hudson argues that "it is clear from the audio tape that [his statement] was clear and unambiguous." To bolster this, Hudson argues that Detective Kalcum "would have ceased questioning if she heard Hudson making the purported statement on the audio tape." This argument misstates Officer Kalcum's testimony. At trial, Officer Kalcum testified that she did not hear Hudson's purported request for an attorney. Then, defense counsel asked:

> Q: If you did hear [Hudson ask for an attorney] and had been there[]to hear that initial portion of the interview, what if anything, would you have done?

---

[6] "[I]f we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, [the] clarity and ease of application would be lost." *Davis*, 512 U.S. at 461. Officers would have to make judgment calls regarding whether a suspect has invoked the right to counsel, "even though he has not said so." *Id.*

[7] Even though it would have been "entirely appropriate" for Detective Heatherington to clarify Hudson's statement before proceeding, *see Newell*, 212 Ariz. at 398, ¶ 33, Detective Heatherington was not constitutionally required to do so. *See Ellison*, 213 Ariz. at 127, ¶ 29.

A:      I wouldn't have done anything.  At that point in time, the detective would have stopped the interview and ended it and gone out [of] the room, [if] he had not, then I would have assisted with that, but --

Q:      So assuming that the [] jury listens to [Hudson's interview] that's now in evidence and they hear within the first minute of the questioning where Mr. Hudson says that *he would like an attorney*, then it's your testimony that the interview should have stopped at that portion?

A:      If that is correct and that's what's on the tape, then yes.

(Emphasis added).  Defense counsel's cross-examination questions did not accurately paraphrase what was on the tape.  Contrary to Hudson's argument, Detective Kalcum testified that she would have ceased questioning if Hudson unequivocally stated "he would like an attorney." This is categorically different from Hudson's actual, equivocal statement: "I feel like I should have an attorney."   On this record, Hudson did not carry the burden of proving that any error, much less fundamental error, occurred.

II.     Prejudice

¶12      Even if the court fundamentally erred, Hudson has not proven prejudice.  Hudson argues that he was prejudiced because the prosecutor commented on Hudson's request for an attorney, "essentially vouching for the Detective and his method of interviewing," and the prosecutor "used Hudson's statements to establish [Hudson's mens rea] in her closing."

¶13      It is well established that "a prosecutor may not comment on a defendant's post-arrest, post-*Miranda* warnings silence as evidence of guilt." *State v. Ramirez*, 178 Ariz. 116, 125 (1994).[8]  A prosecutor may, however, "comment on a defendant's post-*Miranda* warning statements 'because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.'" *Id.* (citation and punctuation omitted).

---

[8]      A prosecutor's improper comments about the exercise of the right to remain silent "will be fundamental error." *State v. Fleming*, 117 Ariz. 122, 127 (1977).

¶14    Hudson's argument mischaracterizes the prosecutor's comments. Hudson did not remain silent, but instead answered questions after he was read his *Miranda* rights. Furthermore, the prosecutor never commented on Hudson's silence. Rather, the prosecutor commented on Hudson's admissions in the interview, as well as the inadequacy of his purported request for counsel and the propriety of Detective Heatherington's questioning. These were proper comments on Hudson's post-*Miranda* statements.

¶15    Further undermining Hudson's allegation of prejudice is his own reliance on the interview as a component of his defense. During closing argument, defense counsel frequently referred to the interview and even quoted from it at length. Defense counsel discussed Hudson's interview as evidence of his intent, his cooperation with officers and his purported request for an attorney. Defense counsel also urged the jury "to listen to [Hudson's] interview and listen to [Hudson's] own words." We therefore find no prejudice.

## CONCLUSION

¶16    For the foregoing reasons, we affirm Hudson's convictions and the resulting sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama