NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOE THOMAS CAMPBELL, *Appellant.*

No. 1 CA-CR 18-0554
FILED 4-9-2020

Appeal from the Superior Court in Maricopa County
No. CR2014-005904-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1          Joe Thomas Campbell ("Campbell") appeals his convictions and sentences for kidnapping and sexual assault. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          We view these facts in a light most favorable to sustaining the verdicts and resolve all reasonable inferences against Campbell. *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). Victim J.B. was riding his bicycle in the early morning of January 9, 2007, when he came across Campbell and two other men. Campbell asked J.B. for a cigarette. Campbell suddenly punched J.B. and knocked him from the bicycle. Campbell grabbed J.B.'s backpack and gave it to the other men, and the other men left with J.B.'s bicycle and backpack. Campbell then stabbed J.B. several times and threatened to kill him. Campbell dragged J.B. to a dark corner where he forced J.B. to perform oral sex. Campbell continued to stab J.B. and told J.B. to pull his pants down. Campbell placed his penis in J.B.'s anus. Campbell ordered J.B. to open his mouth and Campbell placed his penis inside until he ejaculated. Campbell told J.B. to lie face down on the ground for "five minutes" so that Campbell could escape, and Campbell threatened to return and kill J.B. if he did not obey.

¶3          J.B. eventually found help and an ambulance took him to a hospital. He suffered numerous stab wounds, an anal tear, and a collapsed lung. A forensic sexual assault examination at the hospital recovered sperm fraction DNA from J.B.'s mouth. DNA testing later revealed that the sperm DNA recovered from J.B.'s mouth "matched" Campbell's profile.

¶4          The State charged Campbell with armed robbery; kidnapping; aggravated assault; two counts of sexual assault (oral/penile); and sexual assault (anal/penile). After the first trial, a jury acquitted Campbell of armed robbery, aggravated assault, and sexual assault (anal) but could not reach a verdict for the remaining charges, resulting in a

mistrial. Following the second trial, a jury convicted Campbell of kidnapping and one count of sexual assault (oral/penile). The jury acquitted Campbell of the second sexual assault (oral/penile) charge. The trial court sentenced Campbell to concurrent terms of 21 years' imprisonment for the two convictions. With the trial court's permission, Campbell filed a delayed notice of appeal. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

**ANALYSIS**

  *I. Stipulation*

**¶5**  Campbell argues that the trial court erred by finding that a stipulation the parties entered before the first trial did not bind the State in the retrial. We review the trial court's ruling on a party's request to withdraw from a stipulation for abuse of discretion. *Rutledge v. Ariz. Bd. of Regents*, 147 Ariz. 534, 549-50 (App. 1985).

**¶6**  "A stipulation is an agreement, admission or concession made in a judicial proceeding by the parties or their attorneys, in respect to some matter incident to the proceedings, ordinarily for the purpose of avoiding delay, trouble and expense." *Id.* at 549; *see also Pulliam v. Pulliam*, 139 Ariz. 343, 345 (App. 1984) ("[C]ounsel may stipulate as to evidentiary matters such as the admission, exclusion or withdrawal of evidence from consideration."). "[P]arties are bound by their stipulation unless relieved therefrom by the court." *Pulliam*, 139 Ariz. at 345. The trial court has discretion to relieve a party from a stipulation "entered into through inadvertence, excusable neglect, fraud, mistake of fact or law, where the facts stipulated have changed or there has been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce[.]" *Rutledge*, 147 Ariz. at 550; *see Higgins v. Guerin*, 74 Ariz. 187, 190 (1952) (holding that the trial court may relieve a party from a stipulation "for good cause shown").

**¶7**  Before the first trial, the State agreed to admit the hearsay statements of several witnesses without calling those witnesses to testify. The statements pertained to Campbell's mistaken-identity defense that the initial suspect, T. Alexander, committed the offenses. When he was in the hospital, J.B. identified Alexander as the perpetrator from a photographic lineup. Witnesses later told law enforcement that, shortly after the events, Alexander made several statements claiming that he had sexually assaulted a man. The State's express reason for entering the agreement was to

"ensure a speedier trial for the victim" because the trial had undergone significant delay in the pretrial process.

¶8            During the first trial, the statements were presented through direct examination and cross-examination of law enforcement witnesses. An exhibit containing written summaries of the statements was not admitted in evidence. The stipulation was never formally presented to the trial court, and its terms are not otherwise found in the record. Furthermore, the record on appeal contains only a partial transcript of the trial day when the statements were read to the jury. *See State v. Zuck*, 134 Ariz. 509, 513 (1982) ("Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court.").

¶9            Soon after the first trial, the State informed Campbell that it intended to withdraw from the agreement, and the issue was discussed at a status conference approximately one month after the first trial ended. About two months later, Campbell filed a motion to admit the statements, requesting the trial court enforce the stipulation. After briefing and oral argument, the trial court denied the request and relieved the State from the stipulation.

¶10           The trial court acted within its discretion by finding that the State was not bound by the stipulation during the retrial. *See Rutledge*, 147 Ariz. at 549-50. The State's request was timely, informing Campbell of its intention to withdraw soon after the first trial ended and more than six months before the retrial began. *See Gangadean v. Flori Inv. Co.*, 106 Ariz. 245, 248 (1970) (holding that the trial court may relieve a party from a stipulation "upon appropriate and timely motion and for good cause"). As to whether the State showed good cause, the trial court concluded the stipulation "did not concede any element of any offense that the State was required to prove" and " did not concede any fact of consequence." *See id.* The trial court also explained that the State "did not stipulate to any specific fact" in the first trial but "instead effectively waived the hearsay objection." The trial court further noted that Campbell had located three of the previously uncalled witnesses. Additionally, the trial court found "no basis to conclude that the State is seeking to use improper methods to obtain a conviction." The State's request thus followed significant changes in conditions, including completion of the first trial, the three acquittals, and finding the witnesses. *See Rutledge*, 147 Ariz. at 550.

¶11           The trial court further determined that Campbell was in "essentially the same place as he was before the stipulation" and that he did

not establish "that he suffered prejudice as a result of the stipulation or its withdrawal." To the contrary, the trial court suggested that because Campbell had located three witnesses and had been acquitted of three of the six counts, he was in a more advantageous position than when the parties entered the stipulation. The trial court also clarified that Campbell may be able to admit the statements for a purpose other than the truth of the matter asserted or as non-assertions. The trial court explained its analysis and conclusion in a detailed written ruling that showed its full consideration of the issues, and we discern no error. *See State v. Cowles*, 207 Ariz. 8, 9, ¶ 3 (App. 2004) ("Generally, a court abuses its discretion where the record fails to provide substantial support for its decision[.]") (quoting *Files v. Bernal*, 200 Ariz. 64, 65, ¶ 2 (App. 2001)).

**¶12** Furthermore, as the State points out on appeal, the cases on which Campbell relies to argue that the State was bound to the stipulation (*Higgins*, *Pulliam*, *Gangadean*, and *Industrial Park*) are distinguishable because none involved a party's request to withdraw from a stipulation. *See Higgins*, 74 Ariz. at 191 (stating that "no effort was made by the plaintiff to be relieved of the effect of the stipulation"); *Pulliam*, 139 Ariz. at 346 (stating that because the party never requested relief from the stipulation, "the trial court was never given any opportunity to rule" and no error resulted); *Gangadean*, 106 Ariz. at 248 (stating that because "no motion was made to be relieved from the effect thereof, the stipulation is binding upon this court on appeal"); *Indus. Park Corp. v. U.S.I.F. Palo Verde Corp.*, 19 Ariz. App. 342, 344 (1973) (stating "no action was ever taken to set aside the stipulations"). Moreover, each of those cases affirms the proposition that a party may request to withdraw from a stipulation and the court has authority to grant the request. *See also Rutledge*, 147 Ariz. at 549-50.

**¶13** Campbell then argues that the State's withdrawal violated his due process right to present his defense because he was "prohibited from adequately advancing his theory of mistaken identity." But he fails to identify any statements that he was prevented from presenting to the jury because of the trial court's ruling. Conversely, the State submitted a comprehensive appendix on appeal that compares the statements introduced at each trial, concluding that "[n]early every statement contained in the partial record was admitted in the second trial" through Campbell's cross-examination of law enforcement witnesses. Based on our review of the appendix and the record, we agree with the State's conclusion. *See Zuck*, 134 Ariz. at 513. Generally, the jury heard several statements Alexander made to other witnesses claiming he had sexually assaulted a man around the time of the incident. Specifically, the trial court allowed the jury to consider—for the truth of the matter asserted—one particularly

incriminating statement about the night in question: "Alexander had told [G.P.], essentially admitted to him that he had sexually assaulted someone and made him bleed[.]" Based on the statements that were introduced, Campbell thoroughly argued to the jury that Alexander committed the offenses in his closing. Moreover, the trial court's ruling had no bearing on the forensic DNA evidence recovered from J.B.'s mouth, which directly implicated Campbell (the DNA analyst testified that the frequency of finding Campbell's DNA profile was 1 in 670 quintillion African Americans) and excluded Alexander.

¶14 Finally, the jury's acquittal on one of the sexual assault charges shows that the jurors carefully considered the evidence. *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (noting the jurors' decision to acquit the defendant of certain charges "demonstrate[d] the jury's careful and proper consideration of the evidence"). Campbell has thus not shown prejudice resulting from the trial court's ruling, and any hypothetical error was harmless. *See State v. Bible*, 175 Ariz. 549, 588 (1993) (stating that error is harmless if the reviewing court can determine, beyond a reasonable doubt, that it neither affected nor contributed to the verdict).

## II. *Limiting Instruction*

¶15 Campbell next asserts that the trial court erred by providing a limiting instruction for several of the out-of-court statements he introduced. We generally review claims pertaining to jury instructions for abuse of discretion. *State v. Dann*, 220 Ariz. 351, 363-64, ¶ 51 (2009).

¶16 As discussed *supra* ¶ 13, Campbell admitted numerous out-of-court statements that had been the subject of the stipulation. The trial court instructed the jury, both following the testimony and in final instructions, that it may consider some of the statements for any purpose but others may be considered only "for the limited purposes of the following: One, why the police investigation focused on [T.] Alexander and continued in the manner that it did; two, establishing the various relationships of the individuals referenced; and three, evaluating the credibility" of the statements. On appeal, Campbell offers only a single, conclusory assertion that the limiting instruction violated his due process rights, claiming it prevented the jurors from fully considering the evidence. He fails to provide significant argument and does not cite any supporting authority for his contention. Consequently, he has waived his claim. *See State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004) ("[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually

constitutes abandonment and waiver of that claim." (internal quotation omitted)); *see also* Ariz. R. Crim. P. 31.10(A)(7).

**¶17** Assuming, *arguendo*, that Campbell did not waive his claim, the trial court did not err. "If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Ariz. R. Evid. ("Rule") 105; *State v. Gomez*, 226 Ariz. 165, 170, ¶ 26 (2010) ("Rule 105 . . . mandates a limiting instruction on request."). Here, the trial court indicated that the statements subject to the limiting instruction were out-of-court statements not offered for their truth and found the statements admissible under Rules 804(b)(1)(A) and 807. The limiting instructions later given to the jury narrowed how the statements could be considered to accord with the reasons for which the statements were admitted. Because the statements were admitted for a limited purpose and the State made an appropriate request under Rule 105, the trial court was required to give the limiting instruction. *Id.*

### III. *Conduct Related to the Acquitted Offenses*

**¶18** Campbell further contends that the trial court erred by permitting the State to introduce evidence of conduct related to the acquitted charges. Campbell argues that the doctrine of collateral estoppel precluded admission of this evidence and that the trial court improperly found that the evidence was intrinsic. We review constitutional and legal determinations *de novo*. *State v. Davolt*, 207 Ariz. 191, 202, ¶ 21 (2004). We review the trial court's evidentiary rulings for abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

**¶19** The Double Jeopardy Clauses in the United States and Arizona Constitutions prohibit a second prosecution for the same offense following conviction or acquittal and preclude multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984); *State v. Cook*, 185 Ariz. 358, 360 (App. 1995); *see* U.S. Const. amend. V; Ariz. Const. art. 2, § 10. The prohibition against double jeopardy incorporates the doctrine of collateral estoppel. *Schiro v. Farley*, 510 U.S. 222, 232 (1994). "Collateral estoppel simply means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be relitigated between the same parties in any future lawsuit." *Lemke v. Rayes*, 213 Ariz. 232, 240-41, ¶ 23 (App. 2006) (internal quotation omitted). Collateral estoppel is disfavored in criminal cases and applied sparingly. *Id.* at 241, ¶ 24. "[A] defendant has the burden of showing that the issue

[the defendant] claims is barred was actually decided in the prior proceeding." *State v. Rodriguez*, 198 Ariz. 139, 141, ¶ 6 (App. 2000) (internal quotation omitted). Collateral estoppel requires that the "issue sought to be relitigated must be precisely the same as the issue in the previous litigation." *State v. Jimenez*, 130 Ariz. 138, 140 (1981).

¶20 The collateral estoppel component of double jeopardy does not prohibit the State "from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling v. United States*, 493 U.S. 342, 349 (1990); *see also State v. Lehr*, 227 Ariz. 140, 148, ¶ 26 (2011) ("[A]dmission of evidence of other acts for which a defendant has been acquitted does not violate double jeopardy."). "[A]n acquittal does not bar the introduction of other-act evidence under Rule 404, because such evidence involves a lesser standard of proof, and the earlier acquittal could be based upon the failure of the state to have proved the prior bad acts beyond a reasonable doubt." *State v. Yonkman*, 233 Ariz. 369, 374, ¶ 15 (App. 2013) (internal quotation omitted).

¶21 Applying these principles here, we find no merit in Campbell's argument that admitting the challenged evidence violated his constitutional rights against double jeopardy. *Dowling*, *Lehr*, and *Yonkman* establish that collateral estoppel does not prohibit the admission of evidence arising from acquitted acts in a subsequent proceeding with a lower standard of proof, such as Rule 404 evidence. *See also State v. Terrazas*, 189 Ariz. 580, 584 (1997) (holding that the State must prove by clear and convincing evidence that the other act occurred and the defendant committed the act). At Campbell's retrial, the evidence was admitted as intrinsic to the charged offenses and therefore the State did not seek to prove that the acquitted-act conduct occurred beyond a reasonable doubt. *See Yonkman*, 233 Ariz. at 374, ¶ 15. Accordingly, the evidence was not admitted for "precisely the same" issue as in the first trial when the State offered the evidence to prove that Campbell committed the acquitted offenses. *See Jimenez*, 130 Ariz. at 140; *see also State v. Bartolini*, 214 Ariz. 561, 564, ¶ 10 (App. 2007) (holding that collateral estoppel did not prohibit the State from introducing BAC results in a DUI retrial on the DUI-impaired charge following an acquittal of *per se* DUI); *State v. Butler*, 230 Ariz. 465, 472, ¶ 29 (App. 2012) (stating that intrinsic evidence "is not evidence of another crime"). Campbell thus fails to satisfy his burden of showing that the issue was "actually decided" by a final judgment in the first trial. *See Rodriguez*, 198 Ariz. at 141, ¶ 6; *see also Yonkman*, 233 Ariz. at 374, ¶ 15.

¶22 Campbell bases his collateral estoppel argument primarily on his associated claim that the trial court erred by finding that the evidence

was intrinsic. Rule 404(b) applies to evidence of "other" crimes, wrongs, or acts but not to those "charged." Ariz. R. Evid. 404(b); *State v. Ferrero*, 229 Ariz. 239, 242, ¶¶ 13-14 (2012). Under the intrinsic evidence doctrine, "certain acts are so closely related to the charged act that they cannot fairly be considered 'other' acts, but rather are part of the charged act itself." *Ferrero*, 229 Ariz. at 242, ¶ 14. The intrinsic evidence doctrine allows the admission of such interrelated acts without involving Rule 404(b) or (c) analysis. *Id.* at 243, ¶ 20. An intrinsic act must either (1) directly prove the charged act, or (2) have been performed contemporaneously with and directly facilitated the commission of the charged act. *Id.*

**¶23** After briefing and oral argument, the trial court found that the acquitted-act conduct "at a minimum facilitated the kidnapping charge." To reach its conclusion, the trial court relied on the State's theory that Campbell punched the victim at the beginning of the encounter, which thereby initiated the kidnapping and sexual assault crimes. Campbell does not dispute that these acts occurred contemporaneously but argues that the acquitted-act conduct did not facilitate the charged acts under *Ferrero*.

**¶24** The evidence validates the trial court's conclusion. Campbell punched J.B. suddenly and knocked him from his bicycle, putting him in a shocked and defenseless state. Campbell then stabbed and threatened to kill the captive J.B. to subdue him. Campbell immediately began the kidnapping by dragging J.B. to a dark and remote location where he could commit the sexual assault acts. Campbell continued to stab and threaten J.B. during the sexual assault to force him to obey and weaken his resistance. The anal sexual assault occurred between the two oral sexual assault acts and helped Campbell maintain control over the victim throughout the assault. Furthermore, the kidnapping and sexual assault (oral/penile) charges were alleged as dangerous offenses, and hence, evidence involving the knife was relevant to those crimes. The trial court thus acted within its discretion by finding the evidence was "part of the charged act[s]" and intrinsic under *Ferrero*. 229 Ariz. at 242-43, ¶¶ 14, 20.

### IV. *Request for an Acquittal Instruction*

**¶25** Finally, Campbell claims that the trial court erred by denying his request for an acquittal jury instruction. We review the trial court's denial of a requested jury instruction for abuse of discretion. *Dann*, 220 Ariz. at 363-64, ¶ 51.

**¶26** "[I]n cases where the jury has heard details of prior trials or criminal investigations such that the jury may speculate that the defendant

has been tried and convicted of these prior acts, the lack of an acquittal instruction creates a pronounced risk of juror confusion adverse to the defendant." *Yonkman*, 233 Ariz. at 375, ¶ 21 (internal quotation omitted). "Any evidence of acquittal . . . must be admitted properly under Rules 401 and 403." *Id.*

¶27 Because the jury heard testimony of conduct related to the acquitted offenses, Campbell requested that the trial court instruct the jury that he had been acquitted of those charges. Campbell primarily relied on *Yonkman* for his request. The trial court denied Campbell's request but found that a further instruction was appropriate, stating:

> [B]ased on the evidence that was admitted, based on the fact that the Court did receive a juror question, one early on in the case, that was not addressed in full. It was addressed in part as to what the transcript was that was referred to with the witness when the question was submitted. Based on that information, based on the fact that there were references during the course of the trial to certain[] other acts, arguably other crimes, that some type of instruction is appropriate to instruct the jury that they are not to speculate or guess as to why they're not being asked to render a determination with respect to those particular acts.

Accordingly, the trial court gave the jury a "prior proceeding and other acts" instruction that it fashioned:

> You may have heard reference to testimony from a prior proceeding. You are not to speculate or guess about the subject matter, scope, or result of the prior proceeding. Additionally, you may have heard reference to acts other than those with which the Defendant is charged. As to any acts for which the Defendant is not charged, you must not speculate as to why those charges are not now before you. The Defendant is on trial only for the Charged Offenses defined below.

Although he maintained his request for the acquittal instruction, Campbell found no fault with the court's proposed instruction.

¶28 On appeal, Campbell again relies on *Yonkman* to claim that he was entitled to the acquittal instruction. The State argues that *Yonkman* was "wrongly decided." As an initial matter, we decline the State's invitation to reconsider our holding in *Yonkman*.

**¶29**          In *Yonkman*, the defendant was convicted of sexual abuse and sexual conduct with a minor based on acts he committed against his stepdaughter. *Id.* at 371, ¶¶ 1-3. At trial, the State introduced other-act evidence under both Rule 404(b) and (c) from two of the victim's friends who reported similar sexual assault incidents. *Id.* at ¶¶ 3, 10. The trial court denied Yonkman's request to present evidence that he had been acquitted of the charges that arose from the friends' allegations. *Id.*

**¶30**          We held that the trial court erred by denying his request. *Id.* at 376, ¶ 24. In reaching our decision, we recognized that the jury in *Yonkman* heard significant detail about the prior allegations. *Id.* at 375-76, ¶ 22. The jury learned that the two friends reported Yonkman to the police, the police took their statements, and a children's advocacy worker conducted videotaped interviews with them. *Id.* at 375, ¶ 22. During the presentation of the Rule 404 evidence, the parties referred repeatedly to prior transcripts and "testimony," including "testimony" from "down here" at "Court" and an improper reference to a "court trial." *Id.* Based on what the jury heard, we determined that "common sense and natural inferences would lead anyone to conclude there had been an earlier trial." *Id.* We were also concerned that precluding the fact of acquittal improperly limited Yonkman's defense because each victim had possible bias and credibility issues that the ruling prevented Yonkman from developing. *Id.* at 376, ¶ 23. Nevertheless, we found the error harmless. *Id.* at ¶ 25.

**¶31**          *Yonkman* does not support Campbell's claim that he was entitled to an acquittal instruction. First, *Yonkman* is factually distinguishable. In *Yonkman*, the evidence of acquitted conduct was admitted under Rule 404, but the acquitted-act evidence in Campbell's case was intrinsic. Also, the two Rule 404 witnesses in *Yonkman* were not victims of the charges presently before the jury, which conveyed the possibility of a prior trial or other charges. J.B. was the only victim in Campbell's trial. The jury in *Yonkman* learned specific information about the nature of the prior court proceedings. *Id.* at 375-76, ¶ 22. Here, although the jury heard references to testimony from a prior proceeding, it never expressly learned that the earlier proceeding was a trial, and it did not hear the same extent of detail that the jury in *Yonkman* heard. Finally, unlike in *Yonkman*, the trial court here gave a further instruction related to the "prior proceeding and other acts."

**¶32**          The record does not otherwise show sufficient evidence that the jury "likely learned or concluded" Campbell was previously tried for charges other than those before them. *See id.* at 375, ¶ 21. The trial court received only a single, unclear juror question about the nature of those

proceedings that asked if the jurors were "allowed to know if there was a prior trial in 2017 Sept., and what the result was? Talked about testimony & not sure if in <u>court</u> or to <u>detective</u>?" The court answered that the testimony came from "a transcript from a prior hearing in this case." Finally, the concerns we expressed in *Yonkman* about hindering the defendant's ability to impeach the Rule 404 witnesses are absent here: J.B. never identified Campbell as the perpetrator.

**¶33** Furthermore, we held in *Yonkman* that the decision whether to provide the jury with evidence or an instruction of acquittal should be made on a case-by-case basis according to the rules of evidence and the trial court's discretion. *Id.* at 374-76, ¶¶ 17, 19, 21. The trial court did so here by determining that an instruction informing the jury not to speculate about the other acts or prior proceeding was more properly tailored to the testimony it heard throughout trial than an acquittal instruction. *See id.* We presume jurors follow their instructions, *Dann*, 205 Ariz. at 570, ¶ 46, and Campbell has not presented any evidence to rebut that presumption. Indeed, the jury's acquittal on one charge again demonstrates the jury's careful consideration of the evidence and that it was not improperly influenced by the absence of an acquittal instruction. *See Stuard*, 176 Ariz. at 600. On this record, we find that the trial court properly exercised its discretion. *See Yonkman*, 233 Ariz. at 374, ¶ 17.

## CONCLUSION

**¶34** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA